**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

| | |
|---|---|
| **TODD & IVEY FARBER**<br>712 Gatestone Street<br>Gaithersburg, MD 20878<br><br>**Plaintiffs,**<br><br>v.<br><br>**BROCK & SCOTT, LLC d/b/a**<br>**BROCK & SCOTT PLLC**<br>484 Viking Drive, Suite 203<br>Virginia Beach, VA  23452<br><u>Serve On:</u><br>The Corporation Trust Incorporated,<br>        Resident Agent<br>351 West Camden Street<br>Baltimore, MD  21201<br><br>And<br><br>**SUNTRUST MORTGAGE, INC.**<br>900 East Main Street<br>Richmond, VA  23219<br><u>Serve On:</u><br>CSC-Lawyers Incorporating Service,<br>        Resident Agent<br>7 St. Paul Street, Suite 820<br>Baltimore, MD  21202<br><br>**Defendants** | **Case No.    16177**<br><br><br>**REQUEST FOR JURY TRIAL** |

**COMPLAINT**

Plaintiffs Todd and Ivey Farber ("Mr. & Mrs. Farber" or "Plaintiffs"), by their attorneys,

Phillip Robinson and the CONSUMER LAW CENTER LLC, hereby file this Complaint and

jury demand against SunTrust Mortgage Inc. ("SunTrust") and Brock & Scott, LLC d/b/a Brock & Scott PLLC ("Brock & Scott") and state as follows:

## I.   INTRODUCTION

1.      In these instances, such as the underlying matter involving SunTrust, the servicers place their interest above that of the homeowner and unfairly and deceptively ignore their statutory and contractual duties including those which were agreed to as part of their license to legally operate in the State of Maryland and nationwide.

2.      These practices are compounded when homeowners and consumers for whom the legislature has extended certain remedial rights and protections, like Mr. & Mrs. Farber, try in good faith to resolve their situation and apply for appropriate loss mitigation but the servicer, i.e. SunTrust, and the servicer's authorized agents, i.e. the substitute trustees at Brock & Scott, unfairly and deceptively ignores their rights under federal and state law and improperly dual track loss mitigation efforts with foreclosure activities. After their reasonable efforts to mitigate and resolve their mortgage situations are ignored, homeowners such as Mr. & Mrs. Farber are left with no other options but to seek the assistance of the Courts.

3.      The subject practices involved in this action related to Mr. & Mrs. Farber include the unfair and deceptive practice of SunTrust failing to permit homeowners to exercise their mandatory right for loss mitigation options required under federal law by scheduling foreclosure sales for a period of time expressly prohibited by 12 C.F.R. § 1024.41 pursuant to 12 U.S.C.A. § 2605(k)(1)(E).  Brock & Scott is also aware of the rights of Mr. & Mrs. Farber pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C.A. § 2605 ("RESPA"), and SunTrust's promises to them, but acts unfairly and deceptively to schedule and advertise a foreclosure sale

before it is permitted to be scheduled pursuant to 12 C.F.R. § 1024.41 pursuant to 12 U.S.C.A. § 2605(k)(1)(E).

4.      Had SunTrust and the attorneys at the substitute trustees at Brock & Scott performed the basic services required of mortgage servicers and debt collectors nationwide by not attempting to proceed to foreclosure sale while simultaneously soliciting or reviewing loss mitigation packages and/or participation in foreclosure loss mitigation programs such as foreclosure mediation from Mr. & Mrs. Farber this action would not be necessary.

5.      In this action, Mr. & Mrs. Farber are seeking statutory and actual damages available under 12 U.S.C.A. § 2605(f)(2) and 12 C.F.R. § 1024.41(a) as authorized by 12 U.S.C.A. § 2605(k)(1)(E).  Plaintiffs' damages include emotional damages manifested by fear, embarrassment, frustration and anger arising from SunTrust's illegal dual tracking of a foreclosure sale, through its substitute trustees at Brock & Scott, at a time when it is not permitted to schedule or conduct a foreclosure sale.  Plaintiffs are also entitled as damages and losses for the attorney fees incurred by them to engage counsel to represent them at foreclosure mediation and thereafter present SunTrust a timely, complete loss mitigation application in reliance to SunTrust's representation and unqualified statement that it would provide them with all the rights available to Mr. & Farber (and other borrowers) pursuant to 12 U.S.C.A. § 2605(k)(1)(E) and 12 C.F.R. § 1024.41; SunTrust is liable for these fees as actual damages to Mr. & Mrs. Farber in light since SunTrust has ignored the application all together and simply scheduled and advertised another foreclosure sale through its substitute trustees at Brock & Scott in a violation of 12 U.S.C.A. § 2605(k)(1)(E) and 12 C.F.R. § 1024.41(a).

6.      Finally, SunTrust and its substitute trustees at Brock & Scott have simply disregarded the rights of Mr. & Mrs. Farber for when a foreclosure sale may be lawfully

scheduled pursuant to 12 U.S.C.A. § 2605(k)(1)(E) and 12 C.F.R. § 1024.41. The Defendants appear to believe that they are permitted under Maryland law to schedule, advertise and hold the sale even though Mr. & Mrs. Farber have not received any response to their pending. complete loss mitigation application—thereby disregarding the rights afforded to Mr. & Mrs. Farber under RESPA. However, Maryland law regarding the scheduling of foreclosure sales is preempted under the Supremacy Clause of the United States Constitution, art. VI, cl. 2 to the extent Maryland law is inconsistent with RESPA and its regulations at 12 C.F.R. § 1024.41. Mr. & Mrs. Farber request that this Court resolve this dispute and declare the rights of the parties concerning when a foreclosure sale may be lawfully scheduled in the State of Maryland.

## II.    JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 since certain of the claims asserted herein arise under the laws of the United States as well as the Supremacy Clause of the United States Constitution, art. VI, cl. 2. Further, the Court may elect to retain supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.A. § 1367 since those claims are so related to the federal claims asserted herein that they form part of the same case and controversy.

8.     The Court has declaratory authority over the controversy pursuant to 28 U.S.C.A. § 2201, Fed. R. Civ. P. 57, and MD. CODE ANN., CTS. & JUD PROC. § 3-409.

9.     Venue is appropriate in this Court pursuant to 28 U.S.C.A. § 1391 because a substantial portion part of the events or omissions giving rise to the claims before the Court occurred in this District.

### III.   PARTIES

10.     Mr. & Mrs. Farber are the owners of the real property subject to this action located at 712 Gatestone Street, Gaithersburg, MD 20878 (the "Property").  Mr. & Mrs. Farber refinanced their mortgage loan for their home and Property on or about May 10, 2007 and financed the refinance with a loan from Mason Dixon Funding, Inc. The loan was soon thereafter securitized into a mortgage backed security currently held by U.S. Bank, National Association as trustee for LMT 2007-7.

11.     Defendant SunTrust is a mortgage lender and servicer, licensed by the State of Maryland (Lic. No. 20297), that regularly conducts business throughout the United States and in Maryland. SunTrust has acted as the mortgage servicer of Mr. & Mrs. Farber' loan during all periods relevant to the Complaint.     SunTrust acts as the mortgage servicer on behalf of U.S. Bank, National Association as trustee for LMT 2007-7 responsible for the appointment of the substitute trustees at Brock & Scott in this matter and all matters related to the scheduling of foreclosure sales.

12.     Defendant Brock & Scott and its employees/principals, Keith Yacko, Robert Frazier, Thomas Gartner, Jason Hamlin, Gene Jung, and Glen Tschirgi, act as debt collectors on behalf of SunTrust in this action.  Brock and Scott are the authorized agents of SunTrust in all aspects related to the conduct of this action and the scheduling and advertisement of foreclosure sales on SunTrust's behalf.

### IV.   FACTS

13.     Mr. & Mrs. Farber resided at the Property as their primary residence at the time of the origination of the loan, which was used for personal purposes. It is secured by a first lien position on the Property.

14.    The substitute trustees at Brock & Scott commenced a foreclosure action against Mr. & Mrs. Farber and the Property on May 18, 2015 in the Circuit Court for Montgomery County, Maryland.

15.    On or about May 18, 2015, the Plaintiffs filed a Final Loss Mitigation Affidavit ("FLMA") in the foreclosure action.

16.    On or about June 5, 2015 in response to the FMLA and in reliance of it, Mr. & Mrs. Farber timely filed a request for foreclosure mediation pursuant to MD. CODE ANN., REAL PROP. § 7-105.1(j)(1)(ii), conducted by the Maryland Office of Administrative Hearings, for the purpose of discussing loss mitigation alternatives with SunTrust.  Mr. & Mrs. Farber believed that since their income had increased substantially since their initial hardship they were good candidates for loss mitigation.

17.    On June 9, 2015 the Office of Administrative Hearings sent a Notice of Mediation to the Plaintiffs and Brock & Scott acting on behalf of SunTrust.  The mediation was scheduled for July 20, 2015.

18.    With knowledge that the mediation had been timely requested and scheduled and neither they nor SunTrust had the legal right to proceed to a foreclosure sale, Brock & Scott and SunTrust disregarded legislatively intended protections for Mr. & Mrs. Farber and scheduled and advertised a foreclosure sale of the Property and Mr. & Mrs. Farber's home for July 7, 2015 at 2:15 P.M.

19.    The advertisements of the illegally scheduled sale appeared in the Washington Post on June 19 and 26, 2015.

20.     Brock & Scott, on behalf of SunTrust, also mailed, on or about June 26, 2015, notice of the illegally scheduled sale scheduled for July 7, 2015 at 2:15 P.M to all persons each believed had an interest in the Property—including Mr. & Mrs. Farber.

21.     In response to and reliance on SunTrust's sworn testimony, representations, and statements in its papers filed in the foreclosure action that SunTrust believed Mr. & Mrs. Farber had insufficient income, Mr. & Mrs. Farber submitted an application to SunTrust to be considered for loan modification or other loss mitigation that would bring their loan current and reduce the monthly payment thereafter to an affordable sum—Mr. & Mrs. Farber have substantially increased their income from what it was before their mortgage default.  This application was submitted before their July 20, 2015 scheduled mediation.

22.     No agreement could be reached between SunTrust and Mr. & Mrs. Farber at the foreclosure mediation session with SunTrust held on July 20, 2015.

23.     On August 12, 2015 at 3:28 P.M Mr. & Mrs. Farber provided, through counsel, to SunTrust all additional documents (140 pages) it requested they provide to supplement their pending loss mitigation application.

24.     In a letter to Mr. & Mrs. Farber dated August 14, 2015, SunTrust acknowledged receipt of Mr. & Mrs. Farber's request for loss mitigation.   In this correspondence SunTrust represented to Mr. & Mrs. Farber their RESPA rights to be reviewed for loss mitigation options (including retention and liquidation options) and expressly promised, consistent with RESPA, once their application was complete, SunTrust would stop all collection activities "while [the] loan is being evaluated."  Further, SunTrust promised not to proceed with a foreclosure sale until after an evaluation was completed and Mr. & Mrs. Farber's acceptance or appeal rights had expired.   SunTrust's promises stated in its August 14, 2015 were consistent with the rights

afforded to borrowers under RESPA and nowhere in this correspondence or elsewhere has SunTrust ever stated to Mr. & Mrs. Farber that they are not entitled to RESPA's protections.

25.     In letters to Mr. & Mrs. Farber dated August 17, 2015 SunTrust acknowledged receipt of Mr. & Mrs. Farber's supplemental, additional documents it received on August 12, 2015.   In addition, SunTrust requested that Mr. & Mrs. Farber provide it with additional information "to complete the application" no later than September 16, 2016.

26.     In reliance to SunTrust's August 14, 2015 and August 17, 2015 letters and request for additional information "to complete" their application, Mr. & Mrs. Farber provided through counsel on September 15, 2015 at 5:38 P.M. all the information requested by SunTrust that was necessary "to complete" the Plaintiffs' pending loss mitigation application.

27.     After receiving the additional information necessary to complete the Plaintiffs' loss mitigation application on September 15, 2015, SunTrust has never acknowledged in writing or otherwise to Mr. & Mrs. Farber what is the status of their loss mitigation application despite its written promise, consistent with RESPA, on August 14, 2015 that it would do so.

28.     After receiving the additional information necessary to complete the Plaintiffs' loss mitigation application on September 15, 2015, SunTrust has never acknowledged in writing or otherwise to Mr. & Mrs. Farber a denial of Mr. & Mrs. Farber's complete application described herein despite its written promise, consistent with RESPA, on August 14, 2015 that it would do so.

29.      After receiving the additional information necessary to complete the Plaintiffs' loss mitigation application on September 15, 2015, SunTrust has never acknowledged in writing or otherwise to Mr. & Mrs. Farber any appeal rights they may have related to their pending loss

mitigation application despite its written promise, consistent with RESPA, on August 14, 2015 that it would provide them those appeal rights.

30.     Despite SunTrust's promises and Mr. & Mrs. Farber's rights under RESPA which must occur before any foreclosure sale can be scheduled, advertised, or held, SunTrust and Brock & Scott scheduled a second sale of the Property and begun to advertise that sale to occur on January 26, 2016.  This second foreclosure sale was scheduled more than 45 days after the Plaintiffs had completed their loss mitigation application to SunTrust on September 15, 2015.

31.     As part of its contract with SunTrust, Brock & Scott is aware of and has knowledge of Mr. & Mrs. Farber's pending loss mitigation application to which SunTrust has not responded.  This knowledge comes from Brock & Scott's ability to access Mr. & Mrs. Farber's loan information through SunTrust's and its affiliates' data systems which it utilizes in its regular work.

32.     Upon information and belief, based upon their pattern actions and omissions described *supra*, SunTrust and Brock & Scott believe they may schedule foreclosure sales of the Plaintiffs' residential, real property without regard to the mandatory timing requirements established by RESPA.

33.     The basis of the Defendants' belief described in the proceeding paragraph appears to be exclusively upon state law which conflicts with and is otherwise inconsistent with the scheduling of foreclosure sale requirements under RESPA.  This conclusion is based upon the fact that (i) since the Plaintiffs provided SunTrust with all the other documents it requested for the Plaintiffs "to complete" their pending loss mitigation application on September 15, 2015 and thereafter SunTrust has not communicated with the Plaintiffs whatsoever (either orally or in writing) and (ii) the Plaintiffs have not had any opportunity to appeal any loss mitigation

determination made by SunTrust despite RESPA's right to pursue a loss mitigation appeal. Maryland law related to the scheduling of foreclosure sales does not recognize that sales may not be scheduled pursuant to RESPA until a borrower's loss mitigation application is acted upon in writing and the borrower has not accepted an offer of loss mitigation or exhausted his right to appeal any denial under RESPA (i.e. the same rights SunTrust represented to the Plaintiffs in its August 14, 2015 correspondence to them but has simply disregarded thereafter).

34.    Upon information and belief SunTrust and the Plaintiffs have assessed charges and fees to Mr. & Mrs. Farber' mortgage account for the costs wrongfully incurred related to the scheduling and advertisement of the purported July 7, 2015 and January 26, 2016 foreclosure sales which were/are (i) not permitted under Maryland law and (ii) RESPA's regulatory scheme to have been scheduled when it was by SunTrust.

35.    In furtherance of pursuing the second illegal foreclosure sale, Brock & Scott has published an advertisement in the Washington Post on January 8, 2016 (and also scheduled for the advertisement to reappear on January 15, 2015 and January 22, 2016) and stated that it has scheduled the sale pursuant to the Farbers' Deed of Trust recorded in the land records of Montgomery County, Maryland (Book 34324, Page 588).

36.    Brock & Scott failed to disclose in the advertisement or to the Farbers that it did not have the right to pursue the second foreclosure sale pursuant to ¶¶ 22 of the aforementioned Deed of Trust because the right to evoke and utilize the power of sale remedy in the Deed of Trust is conditioned upon the "Applicable Law" governing the parties' relationship related to the Deed of Trust.    "Applicable Law" is defined in the Deed of Trust at ¶ J to include "all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable

judicial opinions." "Applicable Law" therefore under the Deed of Trust includes RESPA and 12 C.F.R. §1024.41.

37.    There was no just or equitable reason for SunTrust, acting directly and indirectly through its agents including the Plaintiffs, to schedule and advertise the first foreclosure sale while it was participating in Maryland's foreclosure mediation program for the purposes of considering Mr. & Mrs. Farber's loss mitigation application.

38.    There was no just or equitable reason for SunTrust, acting directly and indirectly through its agents including the Plaintiffs, to schedule and advertise the second foreclosure sale while Mr. & Mrs. Farber's loss mitigation application was pending since September 15, 2015 and SunTrust has taken no action upon it.

39.    As a direct and proximate result of the acts and omissions of SunTrust and Brock & Scott described *supra*, Mr. & Mrs. Farber are entitled to statutory damages available under the claims asserted herein.  In addition, Mr. & Mrs. Farber are entitled to other economic and non-economic damages, directly related to and proximate to the illegal acts and omissions of the Defendants, including: (i) attorney fees and costs assessed to Mr. & Mrs. Farber's mortgage account for the illegal scheduling of foreclosure sales which SunTrust and Brock & Scott had no right to conduct under RESPA and Maryland law while evaluation of their complete loss mitigation application was ongoing and (ii) the emotional damages manifested from the embarrassment and fear that SunTrust is going to disregard their rights and simply proceed to foreclosure sale through Brock & Scott. These damages and losses would have been avoided all together if SunTrust had simply fulfilled the representations made to Mr. & Mrs. Farber prior to this action and Brock & Scott had not ignored Mr. & Mrs. Farber's right to exhaust loss mitigation options before scheduling any foreclosure sale.

**COUNT I**
**VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT**
**("RESPA"), 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.41**
**(Against All Defendants)**

40.     Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

41.     Plaintiffs are "borrowers" entitled to the protections codified at 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41.  The mortgage loan subject to this action is a federally related mortgages as defined in 12 C.F.R.1024.2 and involves a consumer transaction at the time the loan was taken out by the Plaintiffs.

42.     SunTrust is a mortgage servicer subject to the mandatory requirements of 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41.

43.     Defendant Brock and Scott is also subject to the mandatory requirements of 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41 since "[w]hoever fails to comply with any provision of [12 U.S.C.A. § 2605] **shall** be liable to the borrower for each such failure in the following amounts…In the case of any action by an individual, an amount equal to the sum of--(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [12 U.S.C.A. § 2605], in an amount not to exceed $2,000."  12 U.S.C.A. § 2605(f)(1) (emphasis added).

44.     Since Congress has determined that "whoever" violates RESPA and Regulation X may be liable under 12 U.S.C.A. § 2605(f)(1), non-servicers such as Defendant Brock & Scott in this matter, may be liable to Plaintiffs for RESPA violations under general tort theories since Brock and Scott is acting as the agent for Defendant SunTrust by scheduling foreclosure sales in Maryland on SunTrust's behalf and at SunTrust's direction even though SunTrust does not have the legal right to schedule a foreclosure sale pursuant to the mandatory requirements of 12

U.S.C.A. § 2605 and 12 C.F.R. § 1024.41.  As explained by one court:

> RESPA creates "a species of tort liability." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999) (holding that because 42 U.S.C. § 1983 "provides for relief for invasions of rights protected under federal law," claims under that statute "sound in tort"); *see also Curtis v. Loether,* 415 U.S. 189, 195–96 (1974) (where a statute "defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach," an action under the statute "sounds basically in tort"). The United States Supreme Court has long assumed that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules," and consequently, that its statutorily-created torts "incorporate those rules." *Meyer v. Holley,* 537 U.S. 280, 285 (2003). And "[i]t is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Id.* It follows that unless Congress has "expressed a contrary intent" in RESPA, this court must infer that "ordinary rules [ ] apply" to that statute. *Id.* at 287; *see also Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 108 (1991) ("[W]here a common-law principle is well-established, ... the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident.").

*Rouleau v. US Bank, N.A.*, No. 14-CV-568-JL, 2015 WL 1757104, at *7 (D.N.H. Apr. 17, 2015).

45.     SunTrust  had duty of care under 12 C.F.R. § 1024.41(c) of Regulation X to acknowledge receipt of and evaluate the complete loss mitigation application submitted by the Plaintiffs for all available options and provide them with written notice stating the determination of which loss mitigation options, if any, were available.  Instead, SunTrust has done nothing since it received all the information necessary from the Plaintiffs on September 15, 2015 to complete their application.

46.     Among other practices, RESPA and its implementing regulations prohibit a mortgage servicer, such as Defendant SunTrust, and its agent acting on its behalf, such as Brock & Scott, from simultaneously moving toward foreclosure sale of a homeowner's property and reviewing a homeowner's application for loss mitigation, including applications submitted through Maryland's foreclosure mediation process, a process known as "dual-tracking."

47.     Specifically,

If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:
(A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
(B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of ttheir section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

12 C.F.R. §1024.41(b)(2)(i).

48.     Once a borrower submits a complete application,

within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:
(i) Evaluate the borrower for all loss mitigation options available to the borrower; and
(ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

12 C.F.R. §1024.41(c).

49.     SunTrust has not provided the Plaintiffs with any of the notices required by 12 C.F.R. §1024.41(c) following the Plaintiffs' completion of their loss mitigation application on September 15, 2015.

50.     In addition, once Mr. & Mrs. Farber submitted their intent to pursue foreclosure mediation and/or submitted loss mitigation applications, SunTrust and Brock & Scott were

prohibited from scheduling or conducting a foreclosure sale until (i) after the conclusion of the mediation process, and/or (ii) Su8nTrust had completed its review of the application and (iii) if that application was denied, until Mr. & Mrs. Farber had exhausted their loss mitigation appeal rights:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
> > (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of ttheir section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of ttheir section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
> > (2) The borrower rejects all loss mitigation options offered by the servicer; or
> > (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. §1024.41(g).

51.     In Maryland, a foreclosure sale may not be scheduled by a mortgage servicer or its agents acting until after the completion of the homeowners' foreclosure mediation session. MD. CODE ANN., REAL PROP. § 7-105.1(m).

52.     If a servicer fails to comply with 12 C.F.R. §1024.41(b)(2)(i), "a borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA." 12 C.F.R. §1024.41(a). Section 6(f) of RESPA is codified at 12 U.S.C. 2605(f).   The Maryland legislature has also preserved the rights of homeowners to purse actions such as this.  MD. CODE ANN., REAL PROP. § 7-105.1(m)(3)("Nothing in this subtitle precludes the mortgagor or grantor from pursuing any other remedy or legal defense available to the mortgagor or grantor").

53.     SunTrust, directly and indirectly through its agents including Brock & Scott, has proceeded with foreclosure actions by scheduling and/or advertising foreclosure sales of the Plaintiffs' home at a time not permitted by MD. CODE ANN., REAL PROP. § 7-105.1 and 12 C.F.R. § 1024.41 since they had submitted requests to participate in foreclosure mediation along with loss mitigation applications according to the time set out in the relevant regulations and laws and their right to appeal any denial of loss mitigation had not expired.

54.     By scheduling a sale for July 7, 2015 and again for January 26, 2016 for the Plaintiff's Property and home without having complied with the RESPA requirements discussed herein, SunTrust and Brock & Scott violated the provisions of Md. Code Ann., Real Prop. § 7-105.1 and 12 C.F.R. 1024.41 and the prohibition on dual-tracking.

55.     Upon information and belief, based upon the experiences of the Plaintiffs, described *supra*, and the following public facts and allegations, SunTrust has a pattern and practice of noncompliance with the requirements of 12 U.S.C.A. § 2605 for borrowers like the Named Plaintiffs and RESPA Class members:

    a.      The well pled allegations of the Consent Judgment and Complaint relied upon by the court in *USA v. SunTrust Mortgage Inc*., Case No. 1:14-cv-01028 (U.S.D.C. Dist. Ct., Sept. 30, 2014), which concerned and addressed violations of 12 U.S.C. § 2605 by SunTrust and SunTrust's pattern and practice of illegal dual tracking of foreclosure sales while considering borrowers nationwide (see Complaint [ECF. 1] at ¶ 55).

    b.      The well pled allegations relied upon by the court in entering judgment in *Schneck v. SunTrust Mortgage Inc., Case No. 1:11-cv-1878* (U.S. Md. Dist. Ct., November 12, 2014), which involved SunTrust dual tracking loss mitigation applicants with threat of foreclosure when it had no right to do so.

c.      The well pled allegations of a Complaint now pending in this Court in the matter

of *Healy v. BWW Law Group LLC*, Case No. 8:15-cv-03688 (U.S. Md. Dist. Ct.,

December 1, 2015) in which the borrower attempted to utilize certain loss mitigation

options but SunTrust proceeded with scheduling and advertising foreclosure sales without

responding to the loss mitigation requests.

56.     Plaintiffs are entitled to statutory damages for SunTrust's and Brock & Scott's

violations of 12 C.F.R. § 1024.41 by proceeding with the scheduling of foreclosure sale(s) before

evaluating loss mitigation packages although the Plaintiffs submitted their requests for

foreclosure mediation and/or loss mitigation applications in the time period disclosed to them

and prior to any scheduling of a foreclosure sale.   In addition, the Plaintiffs are entitled to their

actual damages described herein related to the foreclosure sales scheduled in violation of

RESPA.

WHEREFORE, pursuant to 12 U.S.C.A. Plaintiffs respectfully request that the Court (i)

enter judgment in favor of Plaintiffs against Brock & Scott and SunTrust for their violations of

12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41 by proceeding or attempting to proceed with

foreclosure sales while the loss mitigation applications of the Plaintiffs were submitted within

the time disclosed in SunTrust's solicitations of loss mitigation options and foreclosure

mediation and prior to the public scheduling of any foreclosure sale, (ii) award statutory damages

in the sum of $2,000 to the Plaintiffs, (iii) award actual damages and losses sustained by the

Plaintiffs as a direct and proximate result of the acts and omissions described herein as

determined by the trier of fact or in the amount of $20,000 per plaintiff, (iv)  award Plaintiffs'

and RESPA class members' costs, and (v) award attorney's fees incurred by Named Plaintiffs

and RESPA Class members; and (vi) grant Named Plaintiffs and RESPA Class members such

other and further relief as the Court finds necessary and proper.

## COUNT II
### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692, *et seq.*
### (Against Brock & Scott Only)

57.     Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

58.     Brock & Scott regularly collects or attempts to collect consumer debts due or

asserted to be due to another.   Specifically, it is regularly assigned the collection rights of

consumer debts, including the consumer debt of the Plaintiffs subject to this action assigned to it

by SunTrust, to when it believes the debt is in default, and therefore is a Debt Collector within

the meaning of 15 U.S.C. § 1692a(6).   Brock & Scott believed that Plaintiffs' loan was in default

when the loan was assigned to it for collection on or about April 10, 2015 by SunTrust as the

authorized servicer and attorney-if-fact for the loan's secured party.

59.     By scheduling and advertising foreclosure sales of the Plaintiffs' property, as

described herein, when those sales cannot be held in violation of (i) MD. CODE ANN., REAL PROP.

§ 7-105.1(m), (ii) 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41, and/or (iii) the terms of the deed

of trust, Brock & Scott has materially violated 15 U.S.C. § 1692e.

60.     Brock & Scott's actions described herein also constitute materially unfair or

deceptive practices in violation of 15 U.S.C. § 1692f.   This conclusion is based upon the fact that

no reasonable person would believe it would be fair to proceed and advertise foreclosure sales

before them may even lawfully occur under state or federal law.

61.     As a result of Brock & Scott's materially improper debt collection practices,

which directly and indirectly violate Plaintiffs' rights under (i) MD. CODE ANN., REAL PROP. § 7-

105.1(m) and/or (ii) 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41, Plaintiffs' have suffered

actual economic and non-economic damages, as more fully described *supra* and have incurred attorney's fees and court costs.

62.     The FDCPA provides for statutory damages in addition to actual damages.  Mr. & Mrs. Farber are entitled to statutory damages as well.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Brock & Scott pursuant to the FDCPA for actual damages of $20,000 per plaintiff, statutory damages in the amount of $2,000.00, costs and attorneys' fees incurred by Plaintiffs; and grant such other and further relief as the Court finds necessary and proper.

### COUNT III
#### DECLARATORY JUDGMENT REGARDING
#### VIOLATION OF UNITED STATES CONSTITUTION, ART. VI, cl. 2.
#### (Against All Defendants)

63.     Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

64.     U.S. Const. art. VI, cl. 2 provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

65.     By scheduling and advertising foreclosure sales of the Plaintiffs' home and Property based solely upon Maryland law and rules of procedure, Defendants have acted without regard to the Plaintiffs' rights and protections pursuant to 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41 which govern when a foreclosure sale may be scheduled, advertised, and may occur in the circumstances presented in this matter since January 10, 2014—i.e. when a borrower is under consideration for loss mitigation options.

66.    Mr. & Mrs. Farber seek a declaration from this Court that the Real Estate Settlement Procedures Act, 12 U.S.C.A. § 2605 and its implementing regulations at 12 C.F.R. § 1024.41 preempt Defendants from proceeding to a foreclosure sale of the Plaintiffs' home and Property (pursuant to state laws and procedures) since to do so pursuant to state law would be inconsistent to loss mitigation protections established by the Consumer Financial Protection Bureau in 12 C.F.R. § 1024.41 as authorized by 12 U.S.C.A. § 2605(k)(1)(E).

67.    Additionally, Mr. & Mrs. Farber seek a declaration from this Court that the Real Estate Settlement Procedures Act, 12 U.S.C.A. § 2605 and its implementing regulations at 12 C.F.R. § 1024.41 preempt MD. CODE ANN., REAL PROP. § 7-105.1(m) and MD. RULE 14-211 to the extent that these state rules and statutes are inconsistent with the protections and rights established in 12 C.F.R. § 1024.41 for when a foreclosure action may proceed, be advertised, and/or occur.

68.    Maryland law and procedure does not recognize that a foreclosure sale may not proceed until Mr. & Mrs. Farber's loss mitigation rights pursuant to 12 C.F.R. § 1024.41 have been exhausted.  *See* MD. CODE ANN., REAL PROP. § 7-105.1(m) and MD. RULE 14-211.  For this reason, Mr. & Mrs. Farber have no adequate remedy at law and are entitled to the declarations sought herein.

WHEREFORE, Plaintiffs respectfully request that the Court:

A.  Enter a judgment pursuant to 28 U.S.C.A. § 2201, Fed. R. Civ. P. 57, and MD. CODE ANN., CTS. & JUD PROC. § 3-409 declaring that the Plaintiffs' actions to proceed to foreclosure against the Plaintiffs and the Property are preempted by federal law and thus are null and void to the extent such acts and are inconsistent with 12 U.S.C.A. § 2605 and its implementing regulations at 12 C.F.R. § 1024.41;

B.  Enter a judgment pursuant to 28 U.S.C.A. § 2201, Fed. R. Civ. P. 57, and Md. Code

Ann., Cts. & Jud Proc. § 3-409 declaring that the Real Estate Settlement Procedures

Act, 12 U.S.C.A. § 2605 and its implementing regulations at 12 C.F.R. § 1024.41

preempt Md. Code Ann., Real Prop. § 7-105.1(m) and Md. Rule 14-211 to the

extent that these state rules and statutes are inconsistent with the protections and

rights established in 12 C.F.R. § 1024.41 for when a foreclosure action may proceed,

be advertised, and/or occur;

C.  Maintain jurisdiction over this matter should Mr. & Mrs. Farber be required to

address any future actions of the Defendants that contravene this Court's orders and

12 U.S.C.A. § 2605 and its implementing regulations at 12 C.F.R. § 1024.41;

D.  Grant Mr. & Mrs. Farber such other relief as may be just and equitable, including

without limitation, costs and reasonable attorney's fees.

Respectfully Submitted,


 _/s/Phillip R. Robinson_____
Phillip R. Robinson
Bar No. 27824
**CONSUMER LAW CENTER LLC**
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone:     (301) 448-1304
Email: phillip@marylandconsumer.com
*Attorneys for Plaintiffs*