## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

TODD FARBER and
IVEY FARBER,

      Plaintiffs,

      v.

BROCK & SCOTT, LLC *d/b/a*
BROCK & SCOTT PLLC,

      Defendant.

Civil Action No. TDC-16-0117

## MEMORANDUM OPINION

Plaintiffs Todd and Ivey Farber ("the Farbers") have filed this civil action against Defendant Brock & Scott, LLC d/b/a Brock & Scott, PLLC ("Brock & Scott"), alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617 (2012), and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p (2012). Pending before the Court is Brock & Scott's Motion to Dismiss for failure to state a claim. The Court has reviewed the Complaint and briefs and held a hearing on September 20, 2016. For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts are set forth as alleged in the Complaint and are taken as true for the purposes of resolving the Motion. The Farbers are the owners of a residence located in Gaithersburg, Maryland ("the Property"). On or about May 10, 2007, the Farbers refinanced their mortgage on the Property by securing a loan from Mason Dixon Funding, Inc. The loan

was subsequently securitized into a mortgage-backed security currently held by U.S. Bank, National Association ("U.S. Bank"). SunTrust Mortgage, Inc. ("SunTrust") acts as the mortgage servicer on behalf of U.S. Bank. SunTrust appointed Brock & Scott to serve as substitute trustee and authorized Brock & Scott to act as its agent in connection with foreclosure proceedings.

On May 18, 2015, Brock & Scott commenced a foreclosure action against the Farbers and the Property in the Circuit Court of Maryland for Montgomery County. On June 5, 2015, the Farbers requested foreclosure mediation. *See* Md. Code Ann., Real Prop. § 7-105.1(j)(1)(ii) (2012). On June 9, 2015, the Maryland Office of Administrative Hearings scheduled the mediation for July 20, 2015 and notified SunTrust and Brock & Scott. Despite their knowledge that the mediation had been timely requested and scheduled, SunTrust and Brock & Scott scheduled a foreclosure sale of the Property to occur on July 7, 2015. Brock & Scott notified the Farbers of the impending sale and advertised the sale in *The Washington Post*. However, the sale did not occur as scheduled. The Farbers and SunTrust then proceeded to mediation on July 20, but they were unable to reach an agreement.

After receiving notice of the July 2015 foreclosure sale but before participating in foreclosure mediation, the Farbers submitted an application to SunTrust for a loan modification or other loss mitigation. According to the Farbers, Brock & Scott was aware of their application. On August 12, 2015, at the request of SunTrust, the Farbers provided additional documentation to supplement their pending application. On August 14, 2015, SunTrust acknowledged receipt of the materials by letter and informed the Farbers that it would not proceed with any foreclosure sale until after it evaluated the application and, if denied, after the Farbers' appeal rights expired. When Sun Trust then requested additional documents to complete the application, the Farbers timely provided the requested materials on September 15, 2015.

2

SunTrust never acknowledged whether the Farbers' loss mitigation application was complete or informed the Farbers whether their application had been approved or denied. Instead, on January 8, 2016, Brock & Scott placed an advertisement in *The Washington Post* announcing a scheduled foreclosure sale of the Property to occur on January 26, 2016.

The Farbers filed this lawsuit against Sun Trust and Brock & Scott on January 11, 2016. In the Complaint, the Farbers allege that (1) Defendants violated RESPA by scheduling the January 2016 foreclosure sale while the Farbers' loan modification application was pending; (2) Brock & Scott violated the FDCPA by noticing and advertising the foreclosure sale scheduled for June 2015 because it had no right, pursuant to Md. Code Ann., Real Prop. § 7-105.1(m), to conduct the sale before the foreclosure mediation took place; (3) Brock & Scott violated the FDCPA by noticing and scheduling the foreclosure sale for January 2016 because it had no right, pursuant to RESPA, to conduct the sale before the loan modification application was approved or denied; and (4) they are entitled to a declaratory judgment that the provisions of RESPA preempt Maryland state law foreclosure provisions.

Brock & Scott filed its Motion to Dismiss on March 4, 2016.  On March 25, 2016, the Farbers filed an Opposition to the Motion. On April 6, 2016, the parties filed a Notice of Dismissal of all claims against Sun Trust.  Brock & Scott filed its Reply memorandum on April 8, 2016.  At the hearing on the Motion on September 20, 2016, the Farbers' counsel withdrew the cause of action seeking a declaratory judgment on the grounds that it is now moot.  On September 27, 2016, Brock & Scott, with leave of the Court, filed a Notice of Correction purportedly to correct a misstatement at the hearing.  Because the filing went well beyond such a correction and offered additional argument, the Court construes it as a sur-reply brief filed without leave of the Court and strikes it on that basis. *See* D. Md. Local R. 105.2(a).

## DISCUSSION

In its Motion to Dismiss, Brock & Scott seeks dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, it asserts that (1) the Farbers have not stated a valid RESPA claim because the RESPA provision allegedly violated applies only to the conduct of a "servicer," and Brock & Scott is not a "servicer" within the meaning of the statute; and (2) the Farbers have not stated a valid FDCPA claim, in part because Brock & Scott lacked any knowledge of the filing of the loan modification application underlying the alleged RESPA violation. Brock & Scott also argues that there are no RESPA or FDCPA violations because the Farbers had filed for bankruptcy in 2014, and as a result (1) they waived any RESPA claim when they failed to object to a motion to lift the automatic stay; (2) the bankruptcy court's order lifting the automatic stay authorized Brock & Scott to proceed to foreclosure; and (3) as a result of the bankruptcy court's orders discharging any personal liability for the mortgage, the Farbers were no longer entitled to the protections of RESPA or the FDCPA.

### I.      Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II.     Real Estate Settlement Procedures Act

RESPA is a broad remedial statute intended to provide American consumers with more information about the real estate settlement process and protection from "unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601. Section 2605, which governs the "[s]ervicing of mortgage loans" provides that "[a] servicer of a federally related mortgage shall not . . . fail to comply with any . . . obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." § 2605(k)(1)(E). Section 2605 further provides that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower," including potentially for actual and statutory damages. § 2605(f)(1).

RESPA's implementing regulations, also known as "Regulation X," are codified at 12 C.F.R. §§ 1024.1-1024.41. Section 1024.41, regulating loan servicers' loss mitigation procedures, is found in Subpart C, entitled "Mortgage Servicing." Under this section, a servicer that receives a borrower's "complete loss mitigation application more than 37 days before a foreclosure sale" must evaluate the borrower for all loss mitigation options, provide the borrower with written notice of its options, if any, and notify the borrower in writing if its application has been rejected. 12 C.F.R. § 1024.41(c)-(d) (2016). "[A] servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale" unless it has notified the borrower that the loss mitigation application was denied and the borrower has exhausted its appeal rights. 12 C.F.R. § 1024.41(g).

The Farbers claim that Brock & Scott violated this provision of RESPA when it scheduled the January 2016 foreclosure sale while the Farbers' loss mitigation application was still pending. Brock & Scott asserts that 12 U.S.C. § 2605(k) and 12 C.F.R. § 1024.41 do not

apply to Brock & Scott because those provisions specifically regulate "servicer[s] of federally related mortgage loans," 12 U.S.C. § 2605(k)(1), and Brock & Scott is not a "servicer." The Farbers counter that because 12 U.S.C. § 2605(f) provides that "whoever fails to comply with the provisions of this section" may be liable under RESPA, § 2605(k) and 12 C.F.R. § 1024.41 may apply to "non-servicers such as Defendant Brock & Scott." Compl. ¶ 44, ECF No. 1.

When interpreting a statutory provision, we "first and foremost strive to implement congressional intent by examining the plain language of the statute." *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010). The plain language of the RESPA statute supports Brock & Scott's position. The provisions allegedly violated regulate "servicers." 12 U.S.C. § 2605(k) states that "*A servicer* of a federally related mortgage loan" shall not violate the CFPB's regulations. 12 U.S.C. § 2605(k)(1)(E) (emphasis added). 12 C.F.R. § 1024.41(c) requires "*a servicer*" to evaluate a loss mitigation application, and provides that "*a servicer* shall*" notify the borrower of the result. 12 C.F.R. § 1024.41(c)(1) (emphasis added). 12 C.F.R. § 1024.41(g) prohibits "*a servicer*" from moving for foreclosure judgment or order of sale, or from scheduling a foreclosure sale. 12 C.F.R. § 1024(g) (emphasis added).

"Servicer" is a defined term under RESPA. A "servicer" is "the person responsible for servicing of a loan," and "servicing," in turn, is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(2)-(3). The Farbers have not alleged that Brock & Scott was the servicer on their mortgage, or that Brock & Scott was responsible for receiving and applying scheduled periodic mortgage payments. In fact, the Farbers acknowledge that Brock & Scott is a "non-servicer." Compl. ¶ 44. Consequently,

the Farbers cannot state a claim against Brock & Scott under 12 U.S.C. § 2605 or 12 C.F.R. § 1024.41. *See Jones v. ABN Amro Mortg. Grp.*, 606 F.3d 119, 124-25 (3d Cir. 2010) (holding that plaintiffs did not state claims for violations of a servicer's obligations under RESPA where the defendant entities did not meet the definition of "servicer"); *accord Bryant v. Wells Fargo Bank, N.A.*, 861 F. Supp. 2d 646, 661 (E.D.N.C. 2012) (holding that the plaintiffs failed to state a claim under RESPA because defendant substitute trustees "were not 'servicing' Plaintiffs' loan as defined in § 2605(i)(3) and were not acting as a 'servicer' as defined in § 2605(i)(2)").

To salvage their claim, the Farbers contend that 12 U.S.C. § 2605(f), which provides that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower," expands the reach of § 2605(k)(1)(E) and 12 C.F.R. § 1024.41 beyond "servicers" to ensnare other types of entities. This argument is unavailing. Section 2605(f) is entitled "Damages and costs" and thus defines the possible remedies for a breach of any provision within § 2605. The use of the broad term "Whoever" is logical because various subsections of § 2605 could impose obligations on a non-servicer or person not presently engaged in servicing a federally related mortgage loan, such as § 2605(a), which requires each "person who makes a federally related mortgage loan" to make certain disclosures to mortgage applicants, and § 2605(b) and (c), which require a "transferor of loan servicing" or "transferee of loan servicing" to provide certain notices. 12 U.S.C. §§ 2605(a)-(c). Section 2605(k), however, which is entitled "Servicer prohibitions," unambiguously applies to "servicers" only. *See* § 2605(k). While it is true, as the Farbers observe, that violations of 12 U.S.C. § 2605(k) and 12 C.F.R. § 1024.41 may be enforced pursuant to 12 U.S.C. § 2605(f), *see* 12 C.F.R. § 1024.41(a), it does not follow that the "Whoever" language in § 2605(f) operates to broaden the scope of either provision beyond its plain language. Rather, the most natural reading is that § 2605(f) sets forth the range of potential

7

damages for both the provisions that apply only to servicers, such as § 2605(k) and 12 C.F.R. § 1024.41, and those that do not, such as § 2605(a). "[W]here, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229-30 (4th Cir. 2007) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)).

The Farbers' reference to Regulation X's definitions of the terms "subservicer" and "service provider" does not alter this analysis and in fact enhances it. Regulation X defines a term, "service provider," for certain agents of servicers that arguably could include a substitute trustee such as Brock & Scott. 12 C.F.R. § 1024.31 (defining "service provider" as "any party retained by a servicer that interacts with a borrower or provides a service to the servicer for which a borrower may incur a fee"). Although Regulation X imposes certain obligations upon servicers to conduct oversight and periodic reviews of "service providers," 12 C.F.R. § 1024.38(b)(3), it conspicuously does not include "service providers" as subject to the obligations of 12 C.F.R. § 1024.41. Had the Consumer Financial Protection Bureau ("CFPB") intended for § 1024.41 to apply to service providers, it would have included this defined term in that section. The limitation of § 1024.41 to "servicers" only precludes a finding that Brock & Scott is liable for a violation of that provision.

Finally, the Farbers argue that because SunTrust is a "servicer," and Brock & Scott was acting as SunTrust's agent when it scheduled the January foreclosure, RESPA should apply to Brock & Scott under common law agency principles. In support of this theory, the Farbers cite *Rouleau v. U.S. Bank, N.A.*, No. 14-cv-568-JL, 2015 WL 1757104 (D.N.H. April 17, 2015). There, the court determined that a creditor could be liable under vicarious liability principles for violations of RESPA committed by the entity it had engaged to service the mortgage in question.

*Id.* at *7. In *Rouleau*, however, the court held that a bank could be held liable as a principal for RESPA violations allegedly committed by its servicing agent—a scenario that, while not explicitly contemplated by the language of RESPA, reflects standard principles of vicarious liability. *Id.* Vicarious liability, however, does not render Brock & Scott, the agent, liable for the actions of SunTrust, the principal. *See* Restatement (Third) of Agency § 7.01 cmt. d (2006) ("An agent is not subject to liability for torts committed by the agent's principal that do not implicate the agent's own conduct; there is no principle of '*respondeat inferior.*'"). Nor does it create statutory liability under RESPA for Brock & Scott, even though Brock & Scott is not itself a servicer, simply because it was acting as the agent of a servicer. *See id.* cmt. b (2006) (observing that "the agent's status is . . . a basis for imposing liability only when a statute, regulation, or ordinance so provides"); *cf. id.* cmt. c (stating that when an agent's conduct violates a statute, the agent will not be liable if "the imposition of liability is inconsistent with the" statute, in part because "[s]ome statutes explicitly impose liability only on principals"). Had Congress intended for § 2605(k) to apply to servicers and their agents, it could have said so explicitly. Likewise, had the CFPB intended for 12 C.F.R. § 1024.41 to apply to servicers' agents, it could have easily written the regulation accordingly.

The Court therefore concludes that Brock & Scott, as a non-servicer, cannot be held liable for violations of 12 U.S.C. § 2605(k) or 12 C.F.R. § 1024.41. Count I will be dismissed.

### III. Fair Debt Collection Practices Act

The FDCPA protects consumers from "abusive debt collection practices" by debt collectors. 15 U.S.C. § 1692(a). Specifically, the FDCPA regulates the activities of a "debt collector," defined as a person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6);

*Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). A debt is covered by the FDCPA if it is an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

The Farbers allege violations of 15 U.S.C. § 1692e and § 1692f. Under 15 U.S.C. § 1692e, a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Such conduct can include a "threat to take any action that cannot legally be taken or that is not intended to be taken." § 1692e(5). 15 U.S.C. § 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." § 1692f. The United States Court of Appeals for the Fourth Circuit has held that the FDCPA applies to substitute trustees conducting foreclosure proceedings. *See Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373, 375 (4th Cir. 2006) ("[T]rustees, including attorneys, acting in connection with a foreclosure can be 'debt collectors' under the Act."). A foreclosure action constitutes "an attempt to collect a 'debt'" within the meaning of the FDCPA. *Id.* at 378.

Here, the Farbers allege that Brock & Scott violated these provisions of the FDCPA by scheduling and advertising the foreclosure sales on two occasions when the sales were not permitted by law. These allegations are sufficient to state a claim for a violation of the FDCPA because the scheduling and advertising of the foreclosure sales could each constitute a "threat to take any action that cannot legally be taken or that is not intended to be taken." *See* § 1692e(5).

First, the Farbers claim that when Brock & Scott scheduled the July 7, 2015 foreclosure sale, it violated the Maryland foreclosure statute, which prohibits a foreclosure sale during

ongoing foreclosure mediation proceedings. *See* Md. Code Ann., Real Prop. § 7-105.1(m). Under Maryland law, after the filing of a foreclosure action, a borrower is generally entitled to a mediation session. *Id.* § 7-105.1(j). If a borrower requests foreclosure mediation after receiving notice of a foreclosure, the foreclosure attorney may schedule a foreclosure sale "[i]f the parties do not reach an agreement at the postfile mediation, or the 60-day mediation period expires without an extension granted by the Office of Administrative Hearings." Md. Code Ann., Real Prop. § 7-105.1(m)(1). A foreclosure sale may not be held until at least 15 days after the postfile mediation is held. *Id.* § 7-105.1(n)(3). The Farbers' foreclosure mediation session was scheduled for July 20, yet Brock & Scott advertised that the foreclosure sale would occur on July 7, 2015—before the parties had an opportunity to reach an agreement at the mediation session and before the expiration of the 60-day mediation period.

Courts have held that a debt collector's threat to take an action that would violate state law may give rise to an FDCPA violation. *See, e.g., LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010); *Carlson v. First Revenue Assur.*, 359 F.3d 1015, 1018 (8th Cir. 2004); *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 728-29 (D. Md. 2011). For example, in *Bradshaw*, the court held that where a debt collector lacked a valid license required under Maryland law, the unlicensed debt collector's filing of a lawsuit against the plaintiffs violated the FDCPA's bar against any "threat to take action that cannot be legally taken." *Id.* at 729. The act of scheduling and advertising a foreclosure sale not authorized under Maryland law could also constitute such a threat and thus violate the FDCPA. The plain language of this provision indicates that it does not matter, as Brock & Scott contends, that the foreclosure sale did not actually take place on the scheduled date.

Second, the Farbers assert that Brock & Scott scheduled the January 26, 2016 foreclosure sale even though SunTrust had not yet finished evaluating the Farbers' loss mitigation application. As discussed above, under RESPA, the foreclosure sale cannot occur until after such an application has been denied and all appeal rights exhausted. *See* 12 C.F.R. § 1024.41(g); *supra* part II. Because RESPA prohibited such a foreclosure sale at that time, the scheduling and advertising of the foreclosure sale could constitute a debt collector's "threat to take any action that cannot be legally taken." 15 U.S.C. § 1692e(5).

Moreover, the scheduling and advertising of a foreclosure sale at time when there was no legal right to conduct the sale could also violate 15 U.S.C. § 1692f, which generally bars a debt collector from engaging in "unfair . . . means to collect or attempt to collect a debt." § 1692f. Such unfair means are not limited to the non-exclusive list contained in the statute. *Id.* The FDCPA "prohibits 'in general terms' harassing, unfair, or deceptive collection practices." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 536 (6th Cir. 2014) (holding that a debt collector violated the FDCPA by filing and maintaining a lien that was invalid under state law). "While 'misleading' practices under § 1692e and 'unfair' practices under § 1692f reference separate categories of prohibited conduct, they are broad, potentially overlapping, and are not mutually exclusive." *Id.* Repeatedly scheduling and advertising foreclosure sales that are impermissible under federal and state law "would cause at least as much improper exposure as communicating with a consumer via post card or sending mail with a symbol other than the debt collector's address," both of which specifically violate § 1692f. *See id.* at 535; 15 U.S.C. § 1692f(7)-(8). Because developing and publicly advertising a plan to move forward on a

foreclosure sale not permitted by law could be considered an "unfair" means of seeking to collect a debt, the Farbers have plausibly alleged violations of both 15 U.S.C. §§ 1692e and 1692f.[1]

## A.     Knowledge

Brock & Scott's primary arguments against the FDCPA allegations are (1) that the Farbers did not sufficiently allege that Brock & Scott had knowledge of the facts rendering the foreclosure sales unlawful at the time they were scheduled, and (2) that it did not, in fact, have such knowledge. Specifically, Brock & Scott asserts that "[u]pon learning of the mediation scheduled for July 20, 2015, Brock & Scott canceled the July 7, 2015 foreclosure sale and the running of the remaining foreclosure ad," and that it had no knowledge of the pending loan modification application at the time it advertised the January 2016 foreclosure sale. Def's Reply Mem. at 7-8, ECF No. 28.

Preliminarily, the Complaint does allege that "Brock & Scott is aware of and has knowledge" of the Farbers' loss mitigation application, Compl. ¶ 31, and the Court cannot consider Brock & Scott's factual claims to the contrary because on a motion to dismiss, the Court may consider only the factual allegations contained within the four corners of the complaint. *See* Fed. R. Civ. P. 12(d).

More importantly, Brock & Scott's argument fails because knowledge is not an element of a violation of the FDCPA. The FDCPA contains no scienter requirement and instead "imposes liability on 'any debt collector who fails to comply with any provision' of the Act."

---

[1] The Farbers further claim that Brock & Scott violated the FDCPA by scheduling foreclosure sales that were not permissible under the terms of the Deed of Trust. The Deed of Trust authorizes foreclosure as a remedy to the extent of "applicable law," including, according to the Farbers, state foreclosure law and RESPA. The Farbers contend that since the scheduled foreclosure sales violated Maryland foreclosure law and RESPA, they were impermissible under the Deed of Trust. This argument turns on whether the advertised foreclosure sales actually violated Maryland law or RESPA, so the Court does not address it separately at this time.

*Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 375 (4th Cir. 2012).   Thus, a debt collector can be held liable under the FDCPA "without proof of an intentional violation." *Id.*; *see also Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) ("The FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional.").   The FDCPA does contain an affirmative defense, permitting a debt collector to escape liability if it "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); *Warren*, 676 F.3d at 375.   To the extent Brock & Scott wishes to assert such an affirmative defense, it must do so at a later stage in the proceeding. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) ("[A] motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense . . . .").   Accordingly, the claimed inaccuracy of the allegations relating to Brock & Scott's knowledge does not provide a basis to dismiss the FDCPA claims.

### B.   Bankruptcy Arguments

In response to the Farbers' RESPA and FDCPA claims, Brock & Scott has also asserted that the Farbers are not entitled to the protections available under those statutes because of circumstances arising from the Farbers' filing for Chapter 7 bankruptcy protection in 2014, prior to the events at issue in this case. Brock & Scott contends (1) that the Farbers waived all of the arguments raised in the present case when they failed to object to a Motion for Relief from the 11 U.S.C. § 362 Automatic Stay that resulted in a bankruptcy court order lifting the stay and permitting the note holder to "proceed with a foreclosure action" in state court; (2) that the foreclosure sales as scheduled were, in fact, permitted because the bankruptcy court had

authorized them through that order; and (3) the scheduling of the January 2016 foreclosure did not violate RESPA because the Farbers were no longer "borrowers" within the meaning of the statute after the bankruptcy court order of discharge released their personal liability on the mortgage. Because the Court has concluded that the Farbers cannot state a claim against Brock & Scott under RESPA, these arguments need only be addressed as they relate to the FDCPA claim.

None of these arguments alter the conclusion that the Farbers have stated a claim for a violation of the FDCPA. First, the Farbers could not have waived their claims by failing to raise them during the bankruptcy proceeding, because the events giving rise to these claims did not occur until approximately a year after the bankruptcy case closed. The bankruptcy court issued a discharge order on September 3, 2014. *See* Order Discharging Debtors, *In re: Todd Farber*, No. 14-19024-TJC (Bankr. D. Md. Sept. 3, 2014), Dkt. No. 17.[2] Brock & Scott initiated and notified the Farbers of the underlying foreclosure proceeding in May 2015 and scheduled foreclosure sales for July 7, 2015 and January 26, 2016. While it is true that a plaintiff who fails to raise an FDCPA claim that "could have been raised" in a bankruptcy proceeding will be barred from raising it in a later lawsuit, *see Covert v. LVNV Funding, LLC*, 779 F.3d 242, 247 (4th Cir. 2015), the order of the bankruptcy court "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case," *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955). In *Covert*, after receiving a bankruptcy discharge, the plaintiffs brought FDCPA claims against the defendant debt collector for having filed proofs of claim during the bankruptcy proceeding without a Maryland debt collection license. *See Covert*, 779 F.3d at 244. The Fourth Circuit concluded that because the

---

[2] The Court takes judicial notice of the Bankruptcy Court docket pursuant to Federal Rule of Evidence 201(b)(2).

plaintiffs did "not assert that any information necessary to make out their statutory claims was unavailable to them at the time" of the bankruptcy proceeding, the FDCPA claims were barred by *res judicata. Id.* at 247-248. In contrast, here, the alleged violations of RESPA and the Maryland law barring foreclosure while a postfile mediation is pending, upon which the Farbers' FDCPA claims rely, did not occur until July 2015 and January 2016, long after the bankruptcy proceeding had concluded. Thus, the "information necessary to make out their statutory claims" was necessarily "unavailable" to the Farbers prior to the bankruptcy discharge. *See id.*

Second, the bankruptcy court's order lifting the automatic stay did not authorize a foreclosure sale in violation of Maryland law and RESPA. That order, issued on August 5, 2014, stated that:

> [T]he automatic stay imposed by 11 U.S.C. § 362(a) is TERMINATED to enable Movant and/or its successors and assigns to cause the commencement or continuation of a foreclosure proceeding, and/or to pursue other means, as permitted by state law, of obtaining or transferring real title to the real property belong to the Debtors and known as 712 Gatestone Street, Gaithersburg, MD 20878, and to allow the purchaser or transferee to obtain possession of same.

Order Granting Relief from Automatic Stay, *In re: Todd Farber*, No. 14-19024-TJC (Bankr. D. Md. Aug. 8, 2014), Dkt. No. 14. The Farbers do not contest that following the lifting of the automatic stay, Brock & Scott had the right to initiate foreclosure proceedings. Rather, they object that Brock & Scott twice jumped the gun by scheduling and publicly advertising foreclosure sales for times at which such sales were not permitted by state or federal law. An order lifting an automatic stay permits "enforcement of rights against property of the estate," *see Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994), but it does not excuse a creditor from complying with applicable law in the process. Rather, such an order "returns the parties to the legal relationships that existed before the stay became operative." *In re Kahihikolo*, 807 F.2d 1540, 1542 (11th Cir. 1987) (per curiam). "Whatever non-bankruptcy law governed the

16

transactions and relationships of the parties prior to the application of the Bankruptcy Code is the law which controls the conduct of the parties once the stay is lifted." *Id.* Prior to the stay, to the extent that foreclosure proceedings were to occur, the proceedings needed to comply with Maryland foreclosure law and RESPA. By lifting the stay and permitting "the commencement or continuation of a foreclosure proceeding," the bankruptcy court order did not eliminate any timing limitations imposed by the Maryland foreclosure law or RESPA or authorize a foreclosure sale in violation of those laws. Indeed, the order could not have been directed at overriding those requirements because the mediation had yet to be scheduled and the loss mitigation application had yet to be filed. Thus, the bankruptcy court order lifting the automatic stay did not render Brock & Scott's scheduling and advertising of foreclosure sales lawful.

Third, although the bankruptcy proceedings eliminated the Farbers' personal liability for the mortgage, it did not eliminate the applicability of the FDCPA. According to Brock & Scott, once the Farbers ceased to be personally liable for the mortgage, they were no longer "borrowers" within the meaning of RESPA, and the mortgage ceased to be a "debt" within the meaning of the FDCPA. The Farbers contend that they remained "borrowers" under RESPA and the mortgage loan continued to meet the FDCPA's definition of "debt" both because the lien persisted following the bankruptcy and because, having chosen to retain possession of the Property and continue living in the residence, they were responsible for making ongoing mortgage payments in order to avoid foreclosure.

The term "borrower" is not defined in RESPA. Courts have generally concluded that the "borrower" is the person whose name appears on the loan documents. *See, e.g., Johnson v. Ocwen Loan Servicing*, 374 Fed. App'x 868, 873-74 (11th Cir. 2010) (holding that the plaintiff was not a borrower under RESPA because she was not a party to the loan and her name did not

17

appear on loan documents); *Correa v. BAC Home Loans Servicing, LP*, 853 F. Supp. 2d 1203, 1207 (M.D. Fla. 2012) (holding that the plaintiff was not a borrower under RESPA because he did not sign the note or the mortgage, even though he paid the down payment and executed a gift affidavit in connection with the mortgage). A "debt" is defined under the FDCPA as any "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

Under the post-bankruptcy arrangement, the Farbers retained possession of the Property on the condition that they continue to make the required monthly payments. Courts have recognized that a debtor who, like the Farbers, chooses not to reaffirm a mortgage may nevertheless continue to possess the secured property and make the required payments under such an arrangement, known as "ride-through." *See In re Belanger*, 962 F.2d 345, 348-49 (4th Cir. 1992) (recognizing the principle of ride-through); *In re Wilson*, 372 B.R. 816, 819-20 (Bankr. D. S.C. 2007) (holding that the principle of ride-through applied in *Belanger* remains available for real property even after the bankruptcy code was amended to eliminate it for personal property); *see also In re Lopez*, 440 B.R. 447, 447 (Bankr. E.D. Va. 2010) (permitting the ride-through option for real property); *In re Hart*, 402 B.R. 78, 82 (Bankr. D. Del. 2009) ("[A] debtor may retain real property securing a debt without entering into a reaffirmation agreement."); *In re Carabello*, 386 B.R. 398, 401-02 (Bankr. D. Conn. 2008) ("[D]ebtors are permitted to take advantage of the ride through option with respect to relevant real property.").

Under such a circumstance, the discharged debtor "has the right to retain her real property without being required to reaffirm or redeem, so long as she remains current in her

payments and complies with any other contractual obligations." *In re Wilson*, 372 B.R. at 820. At the hearing on the Motion, Brock & Scott acknowledged that the Farbers retained legal title to the Property under this arrangement. Because, under this ride-through arrangement, the Farbers continued to have an "obligation or alleged obligation" to pay money arising out of a transaction for family or household purposes, with the consequence that failure to pay would result in loss of possession and title to the Property, they still had a "debt" within the meaning of the FDCPA. *See* 15 U.S.C. § 1692a(5). This conclusion is consistent with the FDCPA's remedial purpose. *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 393 (4th Cir. 2014) (recognizing that the FDCPA is a remedial statute and must be construed broadly). Furthermore, where the Farbers had signed the original mortgage loan agreements and continue to have a debt arising from those agreements which they are obligated to pay, they remain "borrowers" within the meaning of RESPA. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 764 (3d Cir. 2009) ("RESPA is remedial and should be construed broadly."). Because they remain "borrowers" under RESPA, they may pursue an FDCPA claim based on the allegation that a foreclosure sale was advertised in violation of RESPA.

Although the Fourth Circuit has not addressed these specific issues, the United States Court of Appeals for the Second Circuit has permitted an FDCPA claim brought by a discharged bankruptcy debtor in ride-through status on a mortgage. In *Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86 (2d Cir. 2016), the plaintiff, like the Farbers, obtained a discharge of her entire personal obligation for the mortgage loan on her home but agreed to continue making monthly payments in order to prevent foreclosure of the property. *Id.* at 88. After she defaulted on the new, post-bankruptcy monthly payments and faced demands that she pay or face foreclosure, she filed an FDCPA claim based on "the manner" in which the defendant "attempted to collect the

post-bankruptcy monthly mortgage payments that she concedes she owes" because the debt collector failed to provide certain disclosures required under the FDCPA. *Id.* at 89. Although the court did not explicitly address whether a discharged debtor in ride-through status can avail itself of the FDCPA, it held that the plaintiff had stated a claim under the FDCPA, stated that the FDCPA disclosure provisions "regulate" the "collection of debt that Garfield concedes she owes," and concluded that the FDCPA's requirements did not conflict with any provision of the Bankruptcy Code. *Id.* at 92-93. Likewise, the Farbers' FDCPA claim centers on the "manner" in which Brock & Scott seeks to collect on the monthly payments owed, by scheduling a foreclosure sale at a time not permitted under federal and state law. *See Garfield*, 811 F.3d at 89.

Brock & Scott's reliance on *Lovegrove v. Ocwen Loan Servicing, LLC*, No. 7:14cv00329, 2015 WL 5042913 (W.D. Va. Aug. 26, 2015), is unpersuasive. In *Lovegrove*, the court rejected an FDCPA claim where a debt collector sent monthly account statements, explicitly labeled as "for informational purposes only" if the borrower's obligations had been discharged in bankruptcy, to a homeowner who had received such a discharge but remained on the property. *Id.* at *1, *13. The court did not rule that the FDCPA was inapplicable because the homeowner was in ride-through status; rather, it concluded that the informational notices on their face could not be construed as attempts to collect a debt, and that the objection to the notices was effectively a claim that the bankruptcy discharge injunction had been violated, a situation that had to be resolved under the Bankruptcy Code. *Id.* at *6, *10. Here, there has been no allegation that the foreclosure sale notices violated the bankruptcy discharge injunction.

Finally, the Court notes that at the hearing, Brock & Scott acknowledged that there remains a debt associated with the mortgage. An FDCPA claim, however, need not be brought by an actual debtor. Courts have held that "absent a limitation in the substantive provisions of

the FDCPA, any aggrieved party, not just a debtor, may bring an action under the statute." *Rawlinson v. Law Office of William M. Rudow, LLC*, 460 Fed. App'x 254, 257 (4th Cir. 2012); *see also Wright v. Fin. Serv. Of Norwalk, Inc.*, 22 F.3d 647, 649-50 (6th Cir. 1994) (holding that "any aggrieved party may bring an action under § 1692e"). *See also* 15 U.S.C. § 1692k(a) (stating that subject to certain exceptions not at issue, "any debt collector who fails to comply with any provision of this subchapter *with respect to any person* is liable") (emphasis added). Indeed, in *Lovegrove*, the court acknowledged that a homeowner who has had personal liability on a mortgage discharged in bankruptcy generally may pursue FDCPA claims when it stated that the plaintiff was "a consumer under the FDCPA because he is allegedly obligated to pay a debt." *Lovegrove*, 2015 WL 5042913, at *8. Thus, even if the Farbers were found not to be debtors with respect to the mortgage, they may pursue an FDCPA claim based on conduct by a debt collector that was directed at them.

Having concluded that the Farbers may pursue their FDCPA claim even though they have been discharged from bankruptcy, and that they have stated a plausible claim for relief under that statute, the Court denies the Motion to Dismiss the FDCPA claim.

### CONCLUSION

For the foregoing reasons, Brock & Scott's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Brock & Scott's Motion is GRANTED as to Count I (RESPA) and DENIED as to Count II (FDCPA). Count III (declaratory judgment) is DISMISSED AS MOOT. The Court STRIKES Brock & Scott's Notice of Correction. A separate Order shall issue.

Date:  October 6, 2016

THEODORE D. CHUANG
United States District Judge

21