# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____

| | |
|---|---|
| **TODD FARBER & IVEY FARBER** ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | |
| v. ) | **Civil Action No. WGC-16-117** |
| ) | |
| **BROCK & SCOTT, LLC** ) | |
| *d/b/a* **BROCK & SCOTT, PLLC** ) | |
| ) | |
| *Defendant.* ) | |
| _____) | |

## MEMORANDUM OPINION

On January 11, 2016, Plaintiffs Todd and Ivey Farber ("the Farbers") filed this civil action against Defendants Brock & Scott, LLC d/b/a Brock & Scott, PLLC ("Brock & Scott") and SunTrust Mortgage, Inc. ("SunTrust"), alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617 (2012), and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p (2012).

On March 4, 2016, Brock & Scott filed a Motion to Dismiss and, on March 25, 2016, the Farbers filed an Opposition to the motion. On April 6, 2016, the Farbers filed a notice of dismissal of all claims against SunTrust, *see* ECF No. 25, which Judge Chuang granted two days later, dismissing all claims against SunTrust with prejudice, *see* ECF No. 26. Also, on April 8, 2016, Brock & Scott filed its Reply memorandum. A motions hearing was held September 20, 2016. On October 6, 2016, Judge Chuang issued a Memorandum Opinion and Order granting in part and denying in part Brock & Scott's Motion to Dismiss. *See* ECF Nos. 33-34. Specifically, Judge Chuang granted the Motion to Dismiss as to Count I (RESPA) and denied as to Count II (FDCPA). Count III (Declaratory Judgment) was dismissed as moot. ECF No. 34.

Pending before the court and ready for resolution is Brock & Scott's Motion for Summary Judgment (ECF No. 57). The Farbers filed a combined Response in Opposition and Cross-Motion for Partial Summary Judgment (ECF No. 58). Brock & Scott filed a combined Reply to Opposition to its Motion for Summary Judgment and an Opposition to the Farbers' Cross-Motion for Partial Summary Judgment (ECF No. 65). Finally, the Farbers filed their Reply in Support of their Cross-Motion for Partial Summary Judgment (ECF No. 67).

Also pending before the court are three motions to strike, one filed by the Farbers (ECF No. 59) and two filed by Brock & Scott (ECF Nos. 61-62). These motions have been fully briefed. *See* ECF Nos. 60, 66, 67.

All pending motions are ripe for resolution. No hearing is deemed necessary. The court now rules pursuant to Local Rule 105.6 (D. Md. 2016).

## BACKGROUND

On May 10, 2007, the Farbers entered into a cash-out, refinanced mortgage loan with SunTrust for $675,000 ("mortgage loan"). The Farbers executed a Note and Deed of Trust as part of the transaction. The Deed of Trust pledged the real property, commonly known as 712 Gatestone Street, Gaithersburg, Maryland (the "Property") as security for the repayment of the mortgage loan. The Farbers' mortgage loan was assigned to U.S. Bank National Association, ("U.S. Bank"), as trustee for LMT 2007-7, holder of the Note and beneficiary of the Deed of Trust. SunTrust was the servicer of the mortgage loan.

As of November 2009, the Farbers failed to make their monthly mortgage payment. In March 2010, SunTrust referred the Farbers' mortgage loan to the law firm of Bierman, Geesing & Ward for collection via foreclosure.

On March 15, 2010, Bierman, Geesing & Ward filed an Order to Docket (foreclosure action) in the Circuit Court for Montgomery County, Maryland in order to foreclose on the Property. A foreclosure sale was scheduled for May 12, 2010 and the foreclosure sale was advertised in the newspaper. One day before the foreclosure sale, on May 11, 2010, the Farbers filed for Chapter 13 bankruptcy protection in the U.S. Bankruptcy Court for the District of Maryland (Greenbelt Division). As a result of the bankruptcy filing, the foreclosure proceedings were halted.

On October 27, 2011, SunTrust and U.S. Bank moved for relief from the automatic stay of 11 U.S.C. § 362 because the Farbers failed to make their post-petition mortgage payments between September of 2010 through October of 2011. Thereafter, the Farbers moved to voluntarily dismiss their bankruptcy case. On November 16, 2011, the U.S. Bankruptcy Court granted the Farbers' motion to dismiss voluntarily their bankruptcy case and denied as moot SunTrust and U.S. Bank's motion for relief from the automatic stay.

In late 2013 SunTrust referred again to Bierman, Geesing & Ward the Farbers' mortgage loan for collection via foreclosure. On December 11, 2013, Bierman, Geesing & Ward filed a second Order to Docket (foreclosure action) with the Circuit Court for Montgomery County, Maryland. As part of the initiation of this action, Bierman, Geesing & Ward filed, on behalf of SunTrust and U.S. Bank, a Notice of Intent to Foreclose which stated, among other things, that the Farbers' mortgage loan was past due since June 2, 2010. *See* ECF No. 57-1 at 4-8. Additionally, a November 20, 2013 Final Loss Mitigation Affidavit was submitted with the second Order to Docket. Karin Hughes, on behalf on SunTrust, declared that SunTrust conducted a loss mitigation analysis. According to SunTrust, the Farbers did not qualify for a loss mitigation program for the following reasons: "Borrower does not have sufficient income to

support a modification. File was reviewed for retention option. Per investor cap mod only. Borrower did not show interest in liquidation option." ECF No. 57-17 at 2.

On December 31, 2013, the Farbers filed a Request for Foreclosure Mediation and paid the required fee. *See* ECF No. 57-3 at 2-4. On April 14, 2014, Tara Lehner, Administrative Law Judge, filed a Foreclosure Mediator's Notification of Status with the Circuit Court for Montgomery County, Maryland. The mediator reported, "[t]he parties participated in mediation but no agreement was reached." ECF No. 57-4 at 2. Having received the report from the Office of Administrative Hearings, on April 28, 2014, the Circuit Court for Montgomery County, Maryland ordered that SunTrust and U.S. Bank "may schedule the foreclosure sale, subject to the right of the borrower to file a motion pursuant to Rule 14-211 to stay the sale and dismiss the action." ECF No. 57-5 at 2.

On June 2, 2014, the Farbers filed for Chapter 7 bankruptcy with the U.S. Bankruptcy Court for the District of Maryland (Greenbelt Division). By law, an automatic stay under 11 U.S.C. § 362 became operable. Seventeen days later, on June 19, 2014, SunTrust and U.S. Bank moved for relief from the automatic stay, advising the U.S. Bankruptcy Court that the amount the Farbers owe as of June 16, 2014 is approximately $885,790.53 (excluding interest, attorneys' fees, and court costs). ECF No. 57-6 at 2. SunTrust and U.S Bank asked that the automatic stay be terminated "so as to enable [them] to proceed with a foreclosure action in the Circuit Court for Montgomery County, Maryland against the property located at 712 Gatestone Street, Gaithersburg, MD 20878[.]" *Id.* at 3. The Farbers did not oppose the motion for relief from the automatic stay. *See* ECF No. 57-15 at 7 (Farbers' Response to Request for Admission No. 13). On August 5, 2014, the U.S. Bankruptcy Court granted the relief requested by SunTrust and U.S. Bank ordering "that the automatic stay imposed by 11 U.S.C. § 362(a) is TERMINATED to

enable Movant and/or its successors and assigns to cause the commencement or continuation of a foreclosure proceeding, and/or pursue other means, as permitted by state law, of obtaining or transferring title to the real property belonging to the Debtors and known as 712 Gatestone Street, Gaithersburg, MD 20878, and to allow the purchaser or transferee to obtain possession of same[.]" ECF No. 57-9 at 3.

A foreclosure sale was scheduled for November 14, 2014. *See* ECF No. 57-21 at 2. In late October/early November 2014, the Farbers submitted a loss mitigation application to SunTrust, as acknowledged by SunTrust's letter of November 10, 2014. *See* ECF No. 57-22 at 2. On November 10, 2014, in responding to the Farbers' correspondence to the Consumer Financial Protection Bureau, SunTrust advised the Farbers that SunTrust "submitted a request to our foreclosure attorney to postpone the foreclosure sale scheduled for November 14, 2014, to allow time for loss mitigation review." *Id.*

Three days later, on November 13, 2014, SunTrust addressed individual letters to Todd S. Farber and Ivey Farber, *see* ECF No. 57-23 at 4-6, 15-17, informing them that their recent application for loss mitigation was carefully considered. SunTrust expressed its regret that it is unable to approve the application at this time despite considering several loss mitigation options. The Farbers were denied for each option as follows: Repayment Plan (cannot achieve affordable payment), Forbearance (reason for delinquency is not unemployment), Modification without Trial (cannot achieve affordable payment), Disaster Forbearance (property not affected by natural disaster), Conditional Short Sale (application not timely submitted), and Conditional Deed in Lieu (application not timely submitted). ECF No. 57-23 at 5, 16. None of these options were eligible for an appeal. *Id.*

That on March 30, 2015, a Notice of Intent to Foreclose was sent to the Farbers. *See* ECF No. 57-11 at 2 ¶ 3. On April 9, 2015, Daniel Oliveros, on behalf of SunTrust, signed a Final Loss Mitigation Affidavit. Mr. Oliveros reported that SunTrust conducted a loss mitigation analysis and determined the Farbers did not qualify because the mortgage loan was reviewed for foreclosure avoidance alternatives but the Farbers were denied in November 2014 "for insufficient income to overcome 58 months of arrearages." ECF No. 57-18 at 2. The next day, on April 10, 2015, SunTrust appointed the attorneys of Brock & Scott as Substitute Trustees of the May 10, 2007 Deed of Trust, replacing the attorneys at Bierman, Geesing & Ward. *See* ECF No. 57-10 at 2-3 (Deed of Appointment of Substitute Trustee). Also, on April 10, 2015, Brock & Scott filed with the Circuit Court for Montgomery County, Maryland an "Affidavit Pursuant to Section 7-105.1(e)(1)(ii) Concerning Default and Notice of Intent to Foreclose." *See* ECF No. 57-11 at 2-3. On May 18, 2015, Brock & Scott filed an Order to Docket (foreclosure action) in the Circuit Court for Montgomery County, Maryland against the Farbers. *See* ECF No. 57-15 at 9 (Farbers' Response to Request for Admission No. 20). This was the third foreclosure action brought against the Property due to long-standing defaults on the mortgage loan.

On June 3, 2015, the Farbers completed a Request for Foreclosure Mediation. *See* ECF No. 58-3 at 2-3. Brock & Scott became aware of this request on June 8, 2015. *See* ECF No. 58-2 at 5 (Brock & Scott's Response to Interrogatory No. 9). On June 9, 2015, the Office of Administrative Hearings (for Montgomery County, Maryland), sent a Notice of Mediation to Ivey W. Farber advising her that the mediation is scheduled for July 20, 2015. *See* ECF No. 58-4 at 2. An identical June 9, 2015 Notice of Mediation was addressed to Brock & Scott advising the firm of the July 20, 2015 mediation. *See* ECF No. 57-12 at 2.

Brock & Scott placed a notice of impending foreclosure sale, scheduled for July 7, 2015, in the *Washington Post* which ran on June 19 and 26, 2015. *See* ECF No. 58-6 at 2. In a letter dated June 26, 2015, Brock & Scott advised "all occupants" of 712 Gatestone Street, Gaithersburg, Maryland 20878 about the attached Notice of Impending Foreclosure Sale, "pursuant to Section 7-105.9(c) of the Real Property Article of the Maryland Code." ECF No. 58-5 at 2. On June 29, 2015, SunTrust sent the following to Brock & Scott regarding the Property.

> The above referenced loan, which was previously referred to your firm for initiation of foreclosure proceedings[,] remain in default for the June 01, 2010 and subsequent installments. Based on our review of the loan, SunTrust Mortgage, Inc. has determined that all of the investor's applicable delinquency management requirements have been compiled with and there is neither an approved payment arrangement nor a foreclosure alternative offer pending.
>
> Therefore, SunTrust Mortgage certifies that your firm should continue with the foreclosure sale as scheduled.
>
> Sincerely,
>
> Default Services

ECF No. 57-19 at 2. According to Brock & Scott, on June 28, 2015, it received notice from the Circuit Court of Montgomery County, Maryland that the foreclosure mediation hearing would be held July 20, 2015. ECF No. 58-2 at 5 (Brock & Scott's Response to Interrogatory No. 9). Upon receipt of this notice, Brock & Scott advised SunTrust, canceled the July 7, 2015 foreclosure sale, and canceled any further notices of the foreclosure sale in the *Washington Post*.

In advance of the forthcoming foreclosure mediation with the Office of Administrative Hearings, the Farbers claim they submitted a loss mitigation application to SunTrust on July 15, 2015. In answering Brock & Scott's First Set of Interrogatories, the Farbers list Bates No.

FarberProduction 206-346 as proof of their loss mitigation application of July 15, 2015. *See* ECF No. 58-7 at 7 (Farbers' Response to Interrogatory No. 6).

The foreclosure mediation was held July 20, 2015. Thomas G. Welshko, Administrative Law Judge ("ALJ"), acted as the mediator. On July 28, 2015, the Foreclosure Mediator's Notification of Status was filed with the Circuit Court for Montgomery County, Maryland. ALJ Welshko reported, "[t]he parties participated in the mediation but no agreement was reached." ECF No. 57-13 at 2. Having received the mediator's report, on July 31, 2015, the Circuit Court for Montgomery County, Maryland issued an order directing "that the secured party may schedule the foreclosure sale, subject to the right of the borrower to file a motion pursuant to Rule 14-211 to stay the sale and dismiss the action." ECF No. 57-14 at 2.

According to the Farbers, after submitting the July 15, 2015 application and attending mediation on July 20, 2015, SunTrust requested the Farbers submit certain specified documents by August 15, 2015. They submitted the requested documents on August 12, 2015. Two days later, on August 14, 2015, SunTrust sent the Farbers a letter acknowledging receipt of the documents. *See* ECF No. 57-24 at 2-5. Three days later, on August 17, 2015, SunTrust sent an incomplete information notice to the Farbers listing the specific documents needed, by September 16, 2015, in order to complete the Farbers' application. *See* ECF No. 58-8 at 2-4. According to the Farbers, on September 15, 2015, they provided SunTrust all the requested documents or equivalent explanation letters, which made their loss mitigation application facially complete. According to the Farbers, SunTrust thereafter did not request additional documents nor did SunTrust issue a denial letter for the "July 15, 2015" loss mitigation application.

According to Brock & Scott, on or about November 13, 2015, SunTrust requested continuation of foreclose proceedings against the Property. Brock & Scott scheduled the

foreclosure sale on January 26, 2016. This second notice of impending sale was advertised in the *Washington Post* on January 8, 15, 22, 2016. On January 13, 2016, the Farbers' attorney sent an e-mail to Brock & Scott's attorney advising that a federal lawsuit has been filed by the Farbers against Brock & Scott and SunTrust and that the summons has been issued that day. "Before I spend any time on the pending [foreclosure ] sale, can you please advise what you and Substitute Trustees intend to do about the [foreclosure] sale while the federal litigation is pending?" ECF No. 58-12 at 3 (E-mail of 1/13/16 from Robinson, Esq. to Jung, Esq.). Five days later, Brock & Scott's attorney responded in part, "Please allow us to review the attachment you sen[t] and after conferring with the lender, we will reply to you accordingly." *Id.* (E-mail of 1/18/16 from Jung, Esq. to Robinson, Esq.).

On January 19, 2016, SunTrust prepared and forwarded to Brock & Scott the following letter.

> The above referenced loan, which was previously referred to your firm for initiation of foreclosure proceedings[,] remains in default for the June 01, 2010 and subsequent installments. Based on our review of the loan, SunTrust Mortgage, Inc. has determined that all of the investor's applicable delinquency management requirements have been complied with and there is neither an approved payment arrangement nor a foreclosure alternative offer pending.
>
> Therefore, SunTrust Mortgage certifies that your firm should continue with the foreclosure sale as scheduled.
>
> Sincerely,
>
> Default Services

ECF No. 57-20 at 2. Due to inclement weather, the January 26, 2016 foreclosure sale did not occur. *See* ECF No. 58-12 at 2 (E-mail of 1/26/16 from Jung, Esq. to Robinson, Esq.) ("I just wanted to let you know that the inclement weather took care of cancelling the foreclosure sale for us. The courts were closed so no sales were held.").

# MOTIONS TO STRIKE

Before addressing the cross-motions for summary judgment, the court must resolve three motions to strike challenging documents and purported statements of undisputed material facts.

A.      *Plaintiffs' Motion to Strike*

The Farbers move to strike and/or disregard the purported Affidavit of Tenesha Melton[1] (ECF No. 57-16) submitted in support of Brock & Scott's motion for summary judgment. The Farbers object to Ms. Melton's affidavit on the following grounds: (a) Ms. Melton was not identified as an individual with knowledge of the facts alleged in the Farbers' Complaint or Brock & Scott's Answer and Affirmative Defenses; (b) Ms. Melton's affidavit contains hearsay since Ms. Melton lacks any personal knowledge; and (c) Brock & Scott improperly presented Ms. Melton's affidavit to the court.

Specifically, via discovery requests, the Farbers sought the identities of persons with personal knowledge concerning the pleadings in the case or having discoverable information supporting a position of Brock & Scott. Ms. Melton was not identified by Brock & Scott. Nor did Brock & Scott supplement its discovery responses to Interrogatories 4 and 5 by disclosing the identity of Ms. Melton. Moreover, the non-disclosure of Ms. Melton's purported knowledge is inherently unfair to the Farbers. Brock & Scott should not be rewarded but sanctioned.

Second, the Farbers contend Ms. Melton's affidavit contains a series of immaterial statements which are not admissible evidence and thus are not material to the claims before the court. Some of these statements constitute conclusory testimony, including legal conclusions, not based on Ms. Melton's personal knowledge.

---

[1] In their motion the Farbers refer to Tenesha Melton as "Mr.", presumably based on the affidavit which begins, "Personally appeared before me, the undersigned Notary Public, Tenesha Melton who after having been first duly sworn under my oath, did state that the following is true and accurate to the best of **his** knowledge and belief[.]" ECF No. 57-16 at 2 (emphasis added). In its response to the motion to strike, Brock & Scott refers to Tenesha Melton as "Ms."

Third, Exhibit 4 (ECF No. 57-20) is a January 19, 2016 letter from SunTrust to Brock & Scott advising that the Farbers remain in default and certifying that Brock & Scott should continue with the foreclosure sale as scheduled. The Farbers claim this document was <u>never</u> disclosed during discovery and thus should be stricken. They ask the court to strike in part or in whole the affidavit of Ms. Melton and the accompanying exhibits in accordance with Federal Rule of Civil Procedure 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

In its Response, Brock & Scott notes, at the outset, that ECF No. 57-16 or Exhibit S is titled Affidavit of SunTrust, not Affidavit of Tenesha Melton. This affiant is a "Group Vice President at SunTrust Bank that oversees the Foreclosure, REO, Property Preservation (Loss Mitigation), and HOA departments." ECF No. 60 at 1. Paragraph 2 of the Affidavit states, "[t]hat the Affiant is employed by SunTrust Bank, Inc. (hereinafter "SunTrust") and has knowledge of the facts stated herein[.]" ECF No. 57-16 at 2. Admittedly, the affidavit should have been more specific about Ms. Melton's position and responsibilities with SunTrust. Nonetheless, via the affidavit, Ms. Melton is not presenting facts based solely upon her personal knowledge, but instead upon what knowledge SunTrust, as an institution, has with respect to the Farbers' mortgage loan.

Second, although Brock & Scott did not specifically identify Ms. Melton in answering Interrogatories 4[2] and 5[3], its response to Interrogatory 4 included "the employees in SunTrust's loss mitigation department[,]" and its response to Interrogatory 5 stated in pertinent part,

---

[2] "Identify each person with personal knowledge of any facts alleged in your answer or other pleading in this action." ECF No. 58-2 at 3.

The employees in SunTrust's loss mitigation department – have knowledge of each of the loss mitigation applications submitted to SunTrust Mortgage by Todd and Ivey Farber and have knowledge of the denial and rejection letters sent to the Farbers.

ECF No. 58-2 at 3. Brock & Scott is the Defendant in this case, and is a separate and distinct entity from SunTrust. The Farbers' counsel had an opportunity to conduct discovery on SunTrust. "The fact that Plaintiffs' counsel failed to conduct any discovery upon SunTrust and is now surprised that Ms. Tenesha Melton has knowledge of facts with respect to the Plaintiffs' mortgage loan with SunTrust should not be grounds for a Motion to Strike because the Defendant did not specifically identify Tenesha Melton and every other employee at SunTrust that could possibly have knowledge of the Plaintiffs' mortgage loan." ECF No. 60 at 2. Brock & Scott denies withholding information or names.

Third, Brock & Scott contends the Affidavit of SunTrust, via its employee Ms. Melton, complies with Federal Rule of Civil Procedure 56(c)(4) which provides, "[a]n affidavit . . . used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Brock & Scott concedes, although more details could have been provided as to Ms. Melton's personal knowledge[4] and her competency to testify[5], the Affidavit of SunTrust satisfies the requirements of Rule 56(c)(4) and therefore should not be stricken.

---

[3] "Identify each person, other than a person intended to be called as an expert witness at trial, having discoverable information that tends to support a position that you have taken or intend to take in this action, and state the subject matter of the information possessed by that person." *Id.*

[4] The affidavit discloses Ms. Melton is an employee of SunTrust and she has knowledge of the facts stated within the affidavit. ECF No. 57-16 at 2 ¶ 2.

[5] The affidavit declares Ms. Melton "has reached the age of majority and is competent to make this Affidavit[.]" *Id.* ¶1.

Fourth, Brock & Scott admits it did not receive the executed Affidavit of SunTrust or become aware of Ms. Melton until April 3, 2017, a day before the dispositive motions deadline. Discovery closed on March 6, 2017. "It would have been a little late to supplement discovery on or after April 3, 2017." ECF No. 60 at 3.

Fifth, Brock & Scott rejects the Farbers' assertion that the Affidavit of SunTrust is conclusory and includes immaterial statements. "The Affidavit of SunTrust (ECF 57-16) provides the foreclosure history of the Plaintiffs' mortgage loan with Montgomery County Maryland Circuit Court and with the U.S. Bankruptcy Court in Greenbelt, Maryland, and that history is factual. Furthermore, the exhibits accompanying both the Affidavit of SunTrust (ECF 57-16) and the Defendant's Motion for Summary Judgment (ECF 57) support the factual assertions made in the Affidavit of SunTrust." ECF No. 60 at 3.

Finally, the Farbers assert Exhibit 4 (ECF No. 57-20) to SunTrust's Affidavit should be stricken because Brock & Scott failed to produce the document as part of discovery. Brock & Scott refutes this claim. This January 19, 2016 letter from SunTrust to Brock & Scott was identified on a privilege log which Brock & Scott provided to the Farbers. *See* ECF No. 60-1 at 9; ECF No. 65-4 at 9. This pre-sale certification letter is covered by the attorney-client privilege; SunTrust, as the client, is the holder of the privilege. "The fact that Plaintiffs' counsel never subpoenaed records from SunTrust or asked the Court to require the Defendant to produce [a] privileged document should not be a basis for the Court to strike or exclude the document." ECF No. 60 at 4.

In their Reply, the Farbers claim Brock & Scott concedes Ms. Melton's affidavit is not based on personal knowledge. Therefore, the affidavit cannot be considered at summary judgment. Second, Brock & Scott admits it did not supplement its discovery by providing the

Affidavit of SunTrust. The Farbers assert this admission constitutes bad faith. Further, the Farbers contend Brock & Scott's failure to disclose the receipt of Ms. Melton's April 3, 2017 affidavit violates the mandatory duty to supplement per Rule 26(e). Third, the Farbers object to Brock & Scott using Exhibit 4 (the January 19, 2016 letter from SunTrust to Brock & Scott) as evidence in support of its motion for summary judgment. Since this exhibit was not discoverable because of attorney-client privilege, Brock & Scott is prohibited from using it as evidence pursuant to Rule 37(c)(1). Having concealed the January 19, 2016 letter as attorney-client privilege during discovery, Brock & Scott's introduction of this exhibit at the summary judgment stage is simply bad faith. The Farbers request the court grant their motion to strike.

At the outset, the court notes the Affidavit of SunTrust via its employee Ms. Melton is equivalent to a Rule 30(b)(6) deposition. SunTrust designated Ms. Melton to provide an affidavit on its behalf. Ms. Melton, as SunTrust's affiant, describes "information known or reasonably available to" SunTrust. Although the affidavit should have been more precise by explaining Ms. Melton has knowledge of the facts as known or reasonably available to SunTrust, the affidavit is not in violation of Rule 56(d)(4) because the information presented is not personal to Ms. Melton, but is knowledge "personal" to SunTrust. The only way an entity such as SunTrust may submit information is through designating an individual or individuals to speak about the corporation's collective knowledge.

Second, the court finds Brock & Scott answered Interrogatories 4 and 5 by identifying employees of the loss mitigation department at SunTrust. Nothing precluded the Farbers' counsel from independently inquiring to learn what corporate knowledge SunTrust had about facts alleged in the Farbers' Complaint or Brock & Scott's Answer.

Third, the court disagrees with the Farbers that the Affidavit of SunTrust via its employee, Ms. Melton, contains immaterial and/or conclusory statements not relevant to the remaining claim. The court finds these statements are essentially background information providing a chronological overview and context to issues raised in the Farbers' remaining claim.

Fourth, Brock & Scott admits it received the *executed* affidavit by Ms. Melton on April 3, 2017, *one day before* Brock & Scott filed its motion for summary judgment. Brock & Scott further concedes it did not provide the Farbers a copy of this affidavit before filing its motion for summary judgment. It is apparent to the court that Brock & Scott knew the contents of Ms. Melton's affidavit well before April 3, 2017, since facts from this affidavit are cited repeatedly in support of the motion for summary judgment. Nonetheless, the failure to disclose this affidavit does not warrant the court striking this exhibit.

Brock & Scott obtained an affidavit from SunTrust, formerly a Defendant in this litigation. The Farbers are very familiar with SunTrust, the servicer of their former mortgage loan. The Farbers knew SunTrust retained Brock & Scott as Substitute Trustees to foreclose on the Farbers' former residence. In answering Interrogatories 4 and 5, Brock & Scott identified the employees in SunTrust's loss mitigation department had personal knowledge of facts alleged in the Complaint and the Answer, and that those employees have discoverable information supporting Brock & Scott's actions or positions. Despite this information, the Farbers' counsel did not depose or subpoena a representative of SunTrust to learn what information SunTrust possesses which would support or oppose the position of either the Farbers or Brock & Scott.

It is not clear to the court why the Farbers did not serve a subpoena on SunTrust seeking to depose a witness or obtain documents relevant to this case. The affidavit Brock & Scott obtained from SunTrust was material prepared for a dispositive motion. "[T]he requirement of a

special showing for discovery of trial preparation materials reflects the view that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side." Fed. R. Civ. P. 26(b)(3) 1970 Advisory Committee Note.

Finally, although Brock & Scott did not disclose Exhibit 4 (ECF No. 57-20) to the Farbers during discovery on the grounds of attorney-client privilege, the Farbers were on notice of the document's existence per Brock & Scott's January 17, 2017 privilege log. *See* ECF No. 60-1 at 9; ECF No. 65-4 at 9 (1/19/2016 Letter from SunTrust Mortgage to Brock & Scott concerning Pre-Sale Certification Letter). Since SunTrust is the client, Brock & Scott had no authority to disclose unilaterally. The Farbers' counsel should have obtained a copy of the January 19, 2016 letter directly from SunTrust or moved for production of those privileged documents created by SunTrust.

Moreover, approximately seven months prior, on June 29, 2015, SunTrust issued an identical letter to Brock & Scott. *See* ECF No. 57-19. The Farbers do not claim this document was withheld or concealed. This document is listed on Brock & Scott's January 17, 2017 privilege log as follows: 6/29/2015 Letter [from] SunTrust Mortgage [to] Brock & Scott [regarding] Pre-Sale Certification letter [privilege] Attorney-client privilege. ECF No. 60-1 at 6; ECF No. 65-4 at 6. It is unclear to the court under what circumstances the Farbers obtained a copy, even though the June 29, 2015 letter is listed on the privilege log. Because the Farbers had access to the June 29, 2015, they were on notice about the contents of a pre-sale certification letter from SunTrust. Brock & Scott was substantially justified is not disclosing the January 19, 2016 pre-sale certification letter based on attorney-client privilege. Alternatively, considering the Farbers could have requested from SunTrust or moved for the privileged document, and

considering the Farbers had a copy of the June 29, 2015 pre-sale certification letter, Brock & Scott's nondisclosure was harmless. In the accompanying Order, Plaintiffs' Motion to Strike, Disregard, and Objection to the Purported Affidavit of Tenesha Melton and Exhibit 4 (ECF No. 59) will be denied.

B.    *Defendant's Motion to Strike Portions of Plaintiffs' Statements of Undisputed, Material Facts*

Brock & Scott objects to 10 of the 16 Plaintiffs' Statements of Undisputed, Material Facts. For three of those statements, Brock & Scott has provided additional information for "clarification purposes." The court has reviewed the Farbers' Undisputed Material Facts ("MF") I. *See* ECF No. 58-1 at 1-2. Brock & Scott's clarification more accurately identifies the entities Brock & Scott represented in the foreclosure proceeding. *See* ECF No. 61 at 1. The court therefore accepts this clarification for MF I.

Brock & Scott's proposed clarification for MF XII states in pertinent part, that the January 13, 2016 e-mail from Plaintiffs' counsel to Defendant's counsel "did not specifically inform [Defendant's counsel] that a loss mitigation application with SunTrust was still pending from September of 2015 and asking Brock & Scott to verify this with SunTrust before foreclosing." MF XII does not address this matter; therefore, the court rejects Brock & Scott's proposed clarification.

Next, the court has reviewed MF XV and Brock & Scott's proposed clarification. MF XV, stated in a vacuum, omits the context under which SunTrust accepted and considered a different, up-to-date loss mitigation application from the Farbers. Not only does the court find Brock & Scott's clarification appropriate, the court also finds the following should also be considered.

> SunTrust previously was subject to a putative class action filed by the Farbers in Maryland state court, in August 2015, regarding many of the same allegations contained in their current [federal] complaint. While the Farbers voluntarily dismissed that State court putative class action before SunTrust filed a formal response, the filing complicated matters and resulted in more confusion and delay in resolving the issues and matters associated with this Property.

ECF No. 24 at 2 ¶ 3.

The court now turns its attention to the remaining seven MFs challenged by Brock & Scott. MF IV asserts, when Brock & Scott submitted foreclosure notices to the *Washington Post* to run on June 19 and 26[6], 2015 regarding the scheduled July 7, 2015 foreclosure sale, Brock & Scott knew the Farbers had timely requested mediation and further, that the mediation had been scheduled. Brock & Scott requests MF IV be stricken since it is not an undisputed material fact. In answering Plaintiffs' Interrogatory No. 9 (if you contend you were not aware of the Farbers' request for foreclosure mediation filed on June 5, 2015, please identify all facts supporting that contention), Brock & Scott responded it "became aware of the Farbers' written request for foreclosure mediation on June 8, 2015. Brock & Scott did not receive notice from the Montgomery County Circuit Court that a foreclosure mediation hearing had been scheduled until June 28, 2015." ECF No. 58-2 at 5. Similarly, in its brief, Brock & Scott asserts, "[o]n or about June 29, 2015, the Defendant received notice from the Montgomery County, Maryland, Circuit Court that the Farbers (Plaintiffs) had requested foreclosure mediation and that a mediation hearing had been scheduled for July 20, 2015. See Exhibit I." ECF No. 57 at 5 (emphasis removed). Exhibit I (ECF No. 57-12) is the *June 9, 2015* Notice of Mediation addressed to Keith M. Yacko, Esq. of Brock & Scott from the Office of Administrative Hearings.

---

[6] Plaintiffs mistakenly listed June 23, 2015. The correct date is June 26, 2015. *See* ECF No. 58-6 at 2 (bottom of Classified states "Appeared in: **Washington Post** on 06/19/2015 and 06/26/2015").

Presuming three days for this notice to be delivered by regular mail, Brock & Scott should have received this notice *well before* on or about June 29, 2015. Brock & Scott has not submitted an affidavit from an employee of the firm identifying when the notice of mediation was received or attaching a copy of the postmarked envelope. Moreover, although Brock & Scott's January 17, 2017 Privilege Log lists June 8, 2015 as the date the mediation request was received (based on an internal file note) and lists June 28, 2015 as the date the notice of scheduled mediation hearing was received (based on an internal file note), *see* ECF No. 65-4 at 5, Brock & Scott has not presented any evidence to rebut the presumption that it received the Office of Administrative Hearings' notice of mediation about three days *after* June 9, 2015. Based on the record before this court, MF IV is accurate as written.

Brock & Scott challenges, as undisputed material fact, MF V, namely, that the Farbers submitted a loss mitigation application to SunTrust on July 15, 2015. Brock & Scott notes the Farbers sought such an admission via Request for Admission No. 17. Because Brock & Scott lacked sufficient information or knowledge, it denied the request for admission. Because of this denial, Brock & Scott asserts MF V should be stricken since it cannot be undisputed. The court finds Brock & Scott's denial based on insufficient information or knowledge "does not possess the heft of an affidavit, stipulation, interrogatory answer, or deposition testimony, let alone the 'conclusively established' status of an admission." *Hicks v. Mercedes-Benz U.S. Int'l, Inc.*, 877 F. Supp. 2d 1161, 1170 (N.D. Ala. 2012). The court denies Brock & Scott's request to strike MF V as undisputed material fact.

Brock & Scott challenges MF VI as undisputed material fact on the same basis as MF V, *i.e.*, in responding to a similarly worded request for admission, Brock & Scott denied because it

lacked sufficient information or knowledge. For the reasons stated with regard to MF V, the

court denies Brock & Scott's request to strike MF VI as undisputed material fact.

For MF VII, Brock & Scott does not contest the first sentence but contests the second and

third sentences.[7] The court has reviewed the August 14, 2015 letter from SunTrust to the Farbers

(ECF No. 57-24). The court finds the second and third sentences of MF VII mischaracterize the

August 14, 2015 letter.[8] The court therefore will strike the second and third sentences as *not*

undisputed material fact.

Regarding MF XI, the court will grant Brock & Scott's request to strike as *not* undisputed

material fact. In answering the Farbers' Interrogatory No. 8, Brock & Scott stated, "[t]he July 7,

2015 and the January 26, 2016 foreclosure sales were scheduled by Brock & Scott after it had

been requested that foreclosure proceed. Brock & Scott received notification that the mortgage

loan was in default and had been accelerated, and that there was no loss mitigation application

pending." ECF No. 58-2 at 5.

---

[7] "It further stated that it would not proceed with a foreclosure sale until after an evaluation was completed. Neither SunTrust nor Brock and Scott qualified these representations to the Farbers whatsoever. *See* ECF 57-24." ECF No. 58-1 at 3-4.

[8] The August 14, 2015 letter states in pertinent part:

> If you complete your application after referral, but before a sale date is scheduled or no later than 37 days prior to a scheduled foreclosure sale, then certain foreclosure activities may be suspended until all acceptance periods and any applicable appeal period for any loss mitigation option expire.

> If we receive your application 37 days or less before a scheduled sale, foreclosure proceedings may continue, depending upon the laws of your state. For all loss mitigation options, any foreclosure sale postponement or suspension will occur as permitted by state law, local court rules and public officials.

ECF No. 57-24 at 3.

The court will strike as *not* undisputed material fact MF XIV. What damages and losses the Farbers sustained, if any, as a direct and proximate result of Brock & Scott's threatened foreclosure sales of July 7, 2015 and January 26, 2016 are to be determined.

Finally, the court will strike as *not* undisputed material fact MF XVI. The court has reviewed Brock & Scott's answers to Interrogatory Nos. 8, 18, and 19 and disagrees with the Farbers' assessment. In the accompanying Order, Defendant's Motion to Strike Portions of Plaintiffs' Statement of Undisputed Material Facts will be granted in part and denied in part.

C.     *Defendant's Motion to Strike Portions of the Affidavit of Ivey Farber*

Brock & Scott moves to strike three references (two with accompanying exhibits) in Ivey Farber's affidavit. Paragraph 2h of the affidavit and Exhibit 11 concern e-mail exchanges between the Farbers' counsel (Phil Robinson) and Brock & Scott's counsel (Gene Jung). Ivey Farber was not part of this e-mail exchange nor has she explained how she would have personal knowledge, other than being advised of this communication by Mr. Robinson. "Because Ivey Farber has no personal knowledge of the email exchange, nor is the custodian of records or is an office manager for Consumer Law Center, LLC, her statement in paragraph 2h and Exhibit 11 should be stricken and disregarded." ECF No. 62 at 1. Similarly, Brock & Scott argue Paragraph 2i of the affidavit and Exhibit 13 should be stricken. Exhibit 13 is an e-mail from SunTrust's attorney (John Prisbe) to the Farbers' counsel (Mr. Robinson). Ivey Farber was not part of the e-mail exchange, lacks personal knowledge of the e-mail exchange, and is not a custodian of records or an office manager of Consumer Law Center, LLC. In opposing the motion, the Farbers contend they "are presumed to have knowledge of their attorneys' actions and statements taken on their behalf even if Plaintiffs never reviewed what [their] attorneys did or represented on [their] behalf." ECF No. 67 at 17.

The court has reviewed the cases cited by the Farbers. The court finds the cases persuasive. *See Salisbury Beauty Schs. v. State Bd. Of Cosmetologists*, 268 Md. 32, 45, 300 A.2d 367, 376 (1973) (citations omitted) ("The actions of an attorney within the scope of his employment are binding upon his client under the ordinary principles of agency. This is particularly true concerning the stipulation of counsel in open court."); *Bob Holding Corp. v. Normal Realty Corp.*, 223 Md. 260, 266, 164 A.2d 457, 460 (1960) ("The principle of the cases is that a notification by an attorney, who is an agent with authority to act in the premises, is the act of the client . . .While it is true that an attorney does not have blanket authority to act for a client, it appears that in this case the notice was given under the direction of the vendor, and must be presumed to be its act."). The court therefore will not strike Paragraph 2h and Exhibit I or Paragraph 2i and Exhibit 13 of Ivey Farber's affidavit.

Brock & Scott also seeks to strike Paragraph 3 of Ivey Farber's affidavit. That paragraph states,

> I have reviewed the discovery documents exchanged by the parties and by SunTrust during the discovery process. The purported document from SunTrust to Brock & Scott and presented as Exhibit 4 (ECF. 57-20) to the purported affidavit testimony of Tenesha Melton (ECF. 57-16) was <u>never</u> produced in discovery by either Brock & Scott or SunTrust and was presented for the first time after discovery as part of Brock & Scott's Motion for Summary Judgment.

ECF No. 58-9 at 4.

In opposing this particular paragraph, Brock & Scott argues, since the Farbers did not conduct discovery on SunTrust, the Farbers cannot complain about what Brock & Scott failed to produce in discovery. Second, Brock & Scott notes it identified Exhibit 4 on its privilege log.

> The fact that Plaintiffs' counsel never subpoenaed records from SunTrust or asked the Court to require the Defendant to produce privileged document should not be a basis for the Court to strike or

> exclude the document. Furthermore, SunTrust's Exhibit 4 (ECF
> 57-20) was referred to and specifically identified in the
> "Defendant's Response to Plaintiffs' Second Set of
> Interrogatories." See Request[s] for Admission 33 and 34 in
> Response 17, and Response 18 (ECF 58-13). Because Exhibit 4
> (ECF 57-20) <u>was identified</u> in discovery, paragraph 3 of the
> Affidavit should be stricken and disregarded.

ECF No. 62 at 2-3.

The court declined to strike Exhibit 4 (ECF No. 57-20) for the reasons explained *supra*.

The court therefore will strike Paragraph 3 of Ivey Farber's affidavit. In the accompanying

Order, Defendant's Motion to Strike Portions of the Affidavit of Ivey Farber will be granted in

part and denied in part.

Having resolved the motions to strike, the court now turns its attention to the substantive

issues raised in the cross-motions for summary judgment.

## CROSS-MOTIONS FOR SUMMARY JUDGMENT

In Count II the Farbers allege,

> By scheduling and advertising foreclosure sales of the
> Plaintiffs' property . . . when those sales cannot be held in
> violation of (i) MD. CODE ANN., REAL PROP. § 7-105.1(m), (ii)
> 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41, and/or (iii) the terms
> of the deed of trust, Brock & Scott has materially violated 15
> U.S.C. § 1692e.

> Brock & Scott's actions . . . also constitute materially
> unfair or deceptive practices in violation of 15 U.S.C. § 1692f.
> This conclusion is based upon the fact that no reasonable person
> would believe it would be fair to proceed and advertise foreclosure
> sales before the[y] may even lawfully occur under state or federal
> law.

ECF No. 1 at 18 (Compl. ¶¶ 59-60). Because the Farbers allege violations of specific federal law

and Maryland law, the court must review what these laws prohibit. The court begins with an

examination of the federal law Brock & Scott purportedly violated according to the Farbers.

Section 2605 of Title 12 of the United States Code addresses "[s]ervicing of mortgage loans and administration of escrow accounts." This law applies to federally related mortgage loans. A servicer is the entity responsible for servicing the loan. Servicing means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). In their Complaint the Farbers acknowledge that "SunTrust is a mortgage lender and *servicer* . . . SunTrust has acted as the *mortgage servicer* of Mr. & Mrs. Farber's loan during all periods relevant to the Complaint. SunTrust acts as the *mortgage servicer* on behalf of U.S. Bank. . . ." ECF No. 1 at 5 (Compl. ¶ 11) (emphasis added). Contrarily, the Farbers identify Brock & Scott as "debt collectors on behalf of SunTrust in this action." *Id.* (Compl. ¶ 12).

In the Memorandum Opinion of October 6, 2016, Judge Chuang determined the Farbers cannot state a claim against Brock & Scott either under 12 U.S.C. § 2605 or 12 C.F.R. §1024.41 (Real Estate Settlement Procedures Act or RESPA) because Brock & Scott is a non-servicer. *See* ECF No. 33 at 5-9. Count I (RESPA) therefore was dismissed. Since Count II (Fair Debt Collection Practices Act or "FDCPA") alleges violations of federal law, *i.e.,* RESPA. Since RESPA does not apply to Brock & Scott as a non-servicer, the court finds in favor of Brock & Scott and against the Farbers as to alleged FDCPA violations based on RESPA.

B.     *Maryland Residential Property Foreclosure Procedure*

Maryland Code Annotated, Real Property, §7-105.1(m) states,

> (m) *Scheduling of foreclosure sale on failure of postfile mediation or expiration of mediation period.*—(1) If the parties do not reach an agreement at the postfile mediation, or the 60-day mediation period expires without an extension granted by the Office of

Administrative Hearings, the foreclosure attorney may schedule the foreclosure sale.

(2)(i) In the case of postfile mediation, subject to subparagraphs (ii) and (iii) of this paragraph, the mortgagor or grantor may file a motion to stay the foreclosure sale.

(ii) A motion to stay under this paragraph shall be filed within 15 days after:

1. The date the postfile mediation is held; or

2. If no postfile mediation is held, the date the Office of Administrative Hearings files its report with the court.

(iii) A motion to stay under this paragraph must allege specific reasons why loss mitigation should have been granted.

(3) Nothing in this subtitle precludes the mortgagor or grantor from pursuing any other remedy or legal defense available to the mortgagor or grantor.

The Farbers contend Brock & Scott violated §7-105.1(m)(1) by scheduling and advertising foreclosure sales for July 7, 2015 and for January 26, 2016 when Brock & Scott was prohibited from doing so. Although not alleged in their Complaint, the Farbers argue Brock & Scott's actions also violated §7-105.1(n)(3) ("Prerequisites for foreclosure sale. A foreclosure sale of residential property may not occur unless: (3) If the residential property is owner-occupied residential property and postfile mediation is requested, at least 15 days after: (i) The date the postfile mediation is held; or (ii) If no postfile mediation is held, the date the Office of Administrative Hearings files its report with the court.").

The Farbers assert Brock & Scott was prohibited in scheduling and publicly advertising foreclosures sales on July 7, 2015 and January 26, 2016 for three reasons: "(i) Maryland law prohibits the scheduling of foreclosure sales to occur before the conclusion of a borrowers' right

to participate in foreclosure mediation in Real Prop. § 7-105.1(m)(1) and Real Prop. § 7-105.1(n); (ii) pursuant to federal regulations governing loss mitigation and the scheduling of foreclosure sales, i.e., 12 C.F.R. § 1024.41(g), no foreclosure sale could occur before the Farbers had exhausted their loss mitigation appeal rights; and (iii) based upon the Farbers' contractual rights in the Deed of Trust (incorporating state and federal law). . . ." ECF No. 58 at 10 (citation omitted). Further, the Farbers contend Brock & Scott's right to schedule and advertise the January 26, 2016 foreclosure sale remained subject to "(i) federal law which governs the relationship and preempts Maryland law and (ii) the parties['] contractual rights promises stated in the Deed of Trust and SunTrust's unqualified representations to the Farbers in its August 14, 2015 correspondence." *Id.* at 15 (citation omitted). Since the Farbers have the burden to substantiate their claim, the court looks to the federal law that purportedly preempts Maryland law.

12 C.F.R. § 1024.41 outlines the "loss mitigation procedures." In response to the Farbers' assertions, Brock & Scott claims no violation of 12 C.F.R. § 1024.41 occurred when Brock & Scott sought to proceed with a foreclosure sale in January of 2016 while the Farbers' loss mitigation application was pending with SunTrust "since SunTrust was not required to consider[] the pending loss mitigation application from August of 2015 after it had already declined the Plaintiffs' request for loss mitigation consideration on November 13, 2014." ECF No. 65 at 6. Contrarily, the Farbers contend the 2014 loss mitigation application was incomplete. Since this 2014 application was incomplete, the rights afforded under §1024.41(g) applied to the Farbers' completed application for loss mitigation in 2015. *See* ECF No. 67 at 8-9.

The Farbers' *unsworn* assertion that the November 3, 2014 loss mitigation application was *incomplete* is rebutted by the Affidavit of SunTrust.

> That on November 3, 2014, SunTrust sent an acknowledgment letter that the application *was complete* and under review;
>
> \*                              \*                              \*
>
> That on November 14, 2014, SunTrust sent letters to Todd Farber and to Ivey Farber denying the November 3, 2014 loss mitigation application and *explaining why no loss mitigation workouts could be offered* to the Farbers.

ECF No. 57-16 at 7 (SunTrust Aff. ¶¶ 43, 45) (citation omitted) (emphasis added).

The Farbers were asked about the November 13, 2014 letter from SunTrust via a Request for Admission.

> 18.    Admit or deny that You received a letter from SunTrust Mortgage that was addressed to You dated November 13, 2014, which denies Your application for loss mitigation assistance that SunTrust had deemed to be completed on November 3, 2014, and a true and accurate copy thereof is attached hereto as Exhibit H.
>
> RESPONSE:  Plaintiffs object to the extent that Exhibit H was not included in Defendant's document production, and Defendant's counsel represented that Defendant had no such documents (and that representation appears to be false), although it was apparently in Defendant's possession. Plaintiffs further object to the extent that these denial letters attached as Exhibit H are irregular and impermissible under RESPA because they do not permit the recipient the right to appeal. Without waiving these objections, Plaintiffs admit that Exhibit H speaks for itself and they are producing what they received from SunTrust (which is materially differen[t] from Exhibit H (FarberProduction534-536). Plaintiffs further state that although SunTrust previously denied them for a mortgage modification, they were not precluded from reapplying for a modification after a change in circumstances.

ECF No. 57-15 at 8-9.

SunTrust's November 13, 2014 letter to the Farbers outlined their loss mitigation options as follows:

Each of the loss mitigation options for which your application was reviewed is listed below, along with the reason for denial of each option and whether the decision is eligible for an appeal.

| Repayment Plan | Cannot Achieve Affordable Payment | Appeal Ineligible |
|---|---|---|
| Forbearance | Reason for Delinquency is Not Unemployment | Appeal Ineligible |
| Modification without Trial | Cannot Achieve Affordable Payment | Appeal Ineligible |
| Disaster Forbearance | Property Not Affected by Natural Disaster | Appeal Ineligible |
| Conditional Short Sale | Application Not Timely Submitted | Appeal Ineligible |
| Conditional Deed In Lieu | Application Not Timely Submitted | Appeal Ineligible |

If any of the decisions above are identified as appeal eligible, you will receive the Appeal Submission Form along with this letter describing the steps you must take to appeal a decision.

ECF No. 57-23 at 5, 16.

Under RESPA a servicer is prohibited from moving for foreclosure judgment or from conducting a foreclosure sale *unless* the servicer has "sent the borrower a notice . . . that the borrower is *not eligible for any loss mitigation option and the appeal process . . . is not applicable. . . .*" 12 C.F.R. § 1024.41(g)(1) (emphasis added). The Farbers had **no appeal rights**. Contrary to their assertion, there were no appeal rights to be exhausted before a foreclosure sale could occur.

Under RESPA "[a] servicer is only required to comply with the requirements of [§1024.41] for a *single complete loss mitigation application* for a borrower's mortgage loan account." 12 C.F.R. § 1024.41(i) (emphasis added). That single complete loss mitigation application of November 3, 2014 was reviewed and considered by SunTrust. In the November 13, 2014 letter, SunTrust explained that the Farbers are not eligible for any loss mitigation option and further advised the Farbers that they were not eligible to appeal the determinations that they did not qualify for any loss mitigation option.

SunTrust advised the Farbers that their loss mitigation application was complete as of November 3, 2014. SunTrust was then obligated to comply with the requirements of §1024.41. "Federal courts have consistently held that a loan servicer must comply with the requirements of §1024.41 *at least once* after the January 10, 2014 effective date of the regulation, regardless of whether the servicer evaluated a borrower's prior loss mitigation application prior to that date." *Dionne v. Fannie Mae*, Civil No. 15-cv-56-LM, 2016 U.S. Dist. LEXIS 161847, at *12 (D.N.H. Nov. 21, 2016)(emphasis added). The November 13, 2014 letter from SunTrust constituted compliance with §1024.41. The scheduling and publicly advertising of the July 7, 2015 and January 26, 2016 foreclosure sales by Brock & Scott did not violate RESPA.

When the Farbers completed a Request for Foreclosure Mediation on June 3, 2015, ECF No. 58-3 at 2-3, the Office of Administrative Hearings issued, on June 9, 2015, a Notice of Mediation scheduling the foreclosure mediation for July 20, 2015. ECF No. 57-12 at 2; ECF No. 58-4 at 2. Under Maryland law a foreclosure sale of residential property may not occur until at least 15 days after the date the postfile mediation is held.

Section 7-105.1(n) begins "[a] foreclosure sale of residential property may not occur until. . . ." On or about June 29, 2015, Brock & Scott cancelled the scheduled July 7, 2015 foreclosure sale. No foreclosure sale occurred on July 7, 2015 or at any other date before the July 20, 2015 foreclosure meditation.

Section 7-105.1(n) *prohibits* a <u>foreclosure sale</u> unless certain conditions are met. This section does *not prohibit* the scheduling or advertising of an upcoming foreclosure sale. The court finds Brock & Scott's scheduling and advertising the foreclosure sale for July 7, 2015 did not violate §7-105.1(n).

The court further finds no violation of §7-105.1(m)(1) occurred since the scheduling of the foreclosure sale for July 7, 2015 *predated* the failure of postfile mediation held July 20, 2015. As Brock & Scott observes, "§7-105.1(m)(1) does not specifically prohibit a foreclosure trustee from advertising a property for sale. It provides for how soon *after post-file mediation* a foreclosure sale may be held." ECF No. 57 at 8. Moreover, Brock & Scott cancelled the July 7, 2015 foreclosure sale on July 1, 2015, *see* ECF No. 60-1 at 6; ECF No. 65-4 at 6, nineteen days before the foreclosure mediation.

After the failure of the July 20, 2015 postfile mediation, the Circuit Court for Montgomery County, Maryland issued a July 31, 2015 Order permitting the secured party to schedule a foreclosure sale. ECF No. 57-14 at 2. Despite this authorization, SunTrust permitted the Farbers to submit another loss mitigation application. SunTrust acknowledged receipt of the Farbers' submission by the August 14, 2015 letter. ECF No. 57-24 at 2-3. Three days later, on August 17, 2015, SunTrust advised the Farbers that their loss mitigation application was incomplete, identified the missing documents, and directed the Farbers to submit the missing documents by September 16, 2015 in order to complete the application. ECF No. 58-8 at 2-4.

On December 15, 2015, Brock & Scott advised the Farbers that "an Order to Docket/Complaint to Foreclose a mortgage or deed of trust has been filed with regard [to your residential] property." ECF No. 58-10 at 2. The foreclosure sale was scheduled for January 26, 2016. *Id.* at 3. The foreclosure sale was advertised in the *Washington Post* on January 8, 15, and 22, 2016. ECF No. 58-11. The foreclosure sale did not occur due to inclement weather.

The court finds the scheduling and advertising of the January 26, 2016 foreclosure sale did not violate §7-105.1(m)(1) because the foreclosure sale was scheduled *after* the failed July

20, 2015 mediation. No evidence has been presented of any foreclosure mediation **after** July 20, 2015.

The court further finds the scheduling of the January 26, 2016 foreclosure sale did not violate §7-105.1(n). Specifically, scheduling a foreclosure sale is not proscribed by this section. No violation of §7-105.1(n) occurred because a foreclosure sale did not occur.

Moreover, the court does not find that the scheduling of the January 26, 2016 foreclosure sale constituted dual tracking. Dual tracking occurs "where a servicer moves forward with foreclosure while simultaneously working with the borrower to avoid foreclosure." *Wentzell v. JP Morgan Chase Bank, Nat'l Ass'n*, 627 F. App'x 314, 318 n.3, 2015 U.S. App. LEXIS 17405, at *10 n.3 (5th Cir. Oct. 2, 2015) (quoting Press Release, Consumer Financial Protection Bureau, *CFPB Rules Establish Strong Protections for Homeowners Facing Foreclosure* (Jan. 17, 2013), *available at http://www.consumerfinance.gov/newsroom/consumer-financial-protection-bureau-rules-establish-strong-protections-for-homeowners-facing-foreclosure/*).

According to the Farbers, on September 15, 2015, they provided SunTrust the missing requisite documents or equivalent explanation letters resulting in a facially complete loss mitigation application. ECF No. 58-1 at 4 (MF IX). According to SunTrust, on or about November 11, 2015, it contacted Brock & Scott directing the latter to remove the hold on the Farbers' foreclosure file and restart foreclosure proceedings. ECF No. 57-16 at 6 ¶ 31. The court infers from this action that SunTrust had denied the Farbers' loss mitigation application. Additionally, in the January 19, 2016 letter, SunTrust declared "all of the investor's applicable delinquency management requirements have been complied with and there is neither an approved payment arrangement nor a foreclosure alternative offer pending[,]" ECF No. 57-20 at 2, suggesting that the Farbers' facially complete loss mitigation application had been denied.

SunTrust's March 23, 2016 letter declining the Farbers' loss mitigation application, "Thank you for *your recent application* to SunTrust Mortgage, Inc., for loss mitigation assistance", ECF No. 57-25 at 16 (emphasis added), suggests a more recent application than the one submitted in mid-August 2015 that was not facially completed until mid-September 2015. Historically, SunTrust processed such applications in a more timely fashion. If the Farbers' factual assertions are correct, it took SunTrust *six months* to decline the loss mitigation application.

There is evidence of a more recent application. On February 18, 2016, counsel for SunTrust sent the following e-mail to the Farbers' counsel:

> Following back up on the materials needed to process a loss mitigation application. You were pretty much correct that, in terms of required underwriting freshness, we essentially need a new packet (the one exception would be the 2014 tax return which Suntrust has and which is still timely). If the Farbers and you can coordinate an updated packet of materials, I will help shepherd that through.

ECF No. 58-14 at 2 (E-mail from Prisbe, Esq. to Robinson, Esq. of 2/18/16). The court finds this is the loss mitigation application referred to in the March 23, 2016 letter.

Even if the court's analysis is incorrect and the March 23, 2016 denial letter refers to the mid-August 2015 application which became facially complete in mid-September 2015, the dual tracking prohibition applies to a *servicer*. It is undisputed that Brock & Scott was *not* a servicer of the Farbers' federally related mortgage loan.

Finally, the Farbers contend Brock & Scott violated the terms of the Deed of Trust. Foreclosure is a remedy provided for by the Deed of Trust. *See* ECF No. 57-6 (Refinance Deed of Trust). The court finds no violation of the Deed of Trust with the scheduling and advertising of the July 7, 2015 and January 26, 2016 foreclosure sales.

*C.*     *Violations of FDCPA*

Having found no violation by Brock & Scott under Maryland law, federal law, or the terms of the Deed of Trust, the court must nonetheless determine whether the scheduling and advertising of the July 7, 2015 and January 26, 2016 foreclosure sales runs afoul of the FDCPA.

The FDCPA "protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012)(quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996) (quotation omitted)). To state a claim for relief under the FDCPA, the Farbers must allege that "(1) [they have] been the object of collection activity arising from consumer debt, (2) [Brock & Scott] is a debt [] collector as defined by the FDCPA, and (3) [Brock & Scott] has engaged in an act or omission prohibited by the FDCPA." *Id.* at 759-60 (citation omitted). The FDCPA prohibits debt collectors from, *inter alia*, "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. §1692e, or "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken[.]" *id.* §1692e(5). The Farbers contend the scheduling and advertising of the July 7, 2015 and January 26, 2016 foreclosure sales were illegal actions.

The Farbers also assert the scheduling and advertising of the July 7, 2015 and January 26, 2016 foreclosure sales by Brock & Scott violated another provision of the FDCPA, specifically, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt" by "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest[.]" *Id.* §1692f(6)(A).

Both parties agree the first two elements for stating a claim for relief under the FDCPA are established: (1) the Farbers were the object of collection activity, *i.e.,* foreclosure, arising from their consumer debt, *i.e.,* residential mortgage loan and (b) Brock & Scott is a debt collector as defined by the FDCPA. What is in dispute is whether Brock & Scott engaged in an act or omission prohibited by FDCPA.

The acts of scheduling and advertising the July 7, 2015 and January 26, 2016 foreclosure sales were not false, deceptive, or misleading. Brock & Scott's actions were not threats nor were the scheduled foreclosure sales actions that cannot be legally taken. SunTrust, through its former Substitute Trustee, had initiated two previous foreclosure proceedings. The third foreclosure proceeding by Brock & Scott was intended to be taken.

Nor have the Farbers demonstrated the acts of scheduling and advertising of the July 7, 2015 and the January 26, 2016 foreclosure sales were unfair or unconscionable means to collect a debt. The Farbers have not "provided any case law that simply advertising a foreclosure sale multiple times constitutes a violation of the FDCPA." *Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948, 965 (E.D. Mich. 2012).

The Farbers attempted to avoid foreclosure. As SunTrust noted in its October 30, 2014 letter to Congressman John K. Delaney (in response to correspondence the Farbers apparently sent to their Congressman),

> Our records indicate that the Farber[]s have been seeking loss mitigation assistance since 2010. We have reviewed the loan on several occasions in 2010, 2012 and 2013 for a loss mitigation workout and we communicated with the Farbers concerning the loss mitigation options available. On each review, we were unable to offer a loss mitigation workout due to insufficient income.

ECF No. 57-22 at 3. Under the terms of the Deed of Trust, the Farbers had breached the terms of the mortgage loan by being in default. Foreclosure is a remedy permitted under the Deed of Trust, which SunTrust and U.S. Bank pursued via the Substitute Trustee, Brock & Scott.

**CONCLUSION**

For the foregoing reasons, the court finds there are no genuine issues as to a material fact and thus Brock & Scott is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). An Order will be entered separately granting Brock & Scott's motion for summary judgment and denying the Farbers' cross-motion for partial summary judgment.

September 29, 2017         _____/s/_____
   Date              WILLIAM CONNELLY
                 UNITED STATES MAGISTRATE JUDGE